IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CHRISTOPHER J. RAMIREZ, *Petitioner/Appellant*,

*v.*

SUNDAY R. BARNET, *Respondent/Appellee*.

URHAN KENNETH MERSIMOVSKI and WILLIAM L. HILDEBRANT,
*Intervenors*.

No. 1 CA-CV 15-0568 FC
FILED 11-22-2016

Appeal from the Superior Court in Maricopa County
No. FC2014-095815
The Honorable Joseph Sciarrotta, Jr., Judge (Retired)
The Honorable Shellie Smith, Judge *Pro Tempore*
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**REVERSED AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Steadman Law Firm PLC, Mesa
By Timothy W. Steadman
*Counsel for Petitioner/Appellant*

Cavanagh Law Firm, Phoenix
By Helen R. Davis, Timea R. Hargesheimer
*Counsel for Intervenors*

---

## OPINION

Presiding Judge Patricia K. Norris delivered the opinion of the Court, in which Chief Judge Michael J. Brown and Judge Patricia A. Orozco joined.

---

**N O R R I S**, Judge:

¶1      Petitioner/Appellant Christopher J. Ramirez appeals from the Arizona family court's order dismissing his verified petition to establish paternity of a child born to Respondent/Appellee Sunday R. Barnet for lack of jurisdiction. We reject the argument raised by Intervenors on appeal, Urhan Kenneth Mersimovski and William L. Hildebrant ("Intervenors"), that the family court properly dismissed Ramirez's paternity proceeding because, under the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C.A. § 1738A (West 2000), it was required to give full faith and credit to an order entered by a New York court granting their petition to adopt the child. Further, as Ramirez argues on appeal, the family court had jurisdiction to act on his paternity petition under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in Arizona Revised Statutes ("A.R.S.") sections 25-1001 to -1067 (Supp. 2015).[1] Thus, we reverse and remand for further proceedings as instructed below. *See supra* ¶ 34.

### FACTS AND PROCEDURAL BACKGROUND

¶2      Barnet became pregnant in February 2014, and the child was born on October 27, 2014. Ramirez believed he was the child's father. A few days before the child's birth, Barnet left Ramirez and stopped communicating with him. Ramirez found out Barnet had given birth to the child at a local hospital, and went to the hospital a day after the child's birth, but was not allowed to see the child. On October 30, 2014, Ramirez filed a verified petition in the family court to establish paternity, legal decision making, parenting time, and support (the "paternity petition").

---

[1]The Legislature has not materially amended the state statutes cited in this opinion since Ramirez filed his paternity petition. Thus, we cite to the current versions of the statutes.

¶3        At the same time Ramirez filed the paternity petition, he also filed a verified motion for emergency temporary custody orders without notice ("temporary orders motion"). Ramirez alleged in the temporary orders motion that Barnet's oldest daughter was the subject of a pending dependency/termination of parental rights proceeding filed by the Arizona Department of Child Safety ("DCS"), and that DCS had informed Barnet that if she had another child it would take the child into care. Given this, Ramirez argued that he and his family should be allowed to care for the child. Accordingly, Ramirez sought both emergency and temporary legal decision making and physical custody of the child. On November 6, 2014, the clerk of the court entered an order signed by the family court on November 4, 2014, granting Ramirez emergency temporary legal decision making and physical custody of the child and ordering any person having physical custody of the child to immediately relinquish custody to Ramirez ("the temporary order"). The court also set a "return hearing" on the temporary orders motion for November 19, 2014. A private process server served Barnet with the paternity petition, the temporary orders motion, and the temporary order on November 15, 2014.

¶4        A day before the return hearing, Barnet moved to dismiss the paternity petition and the emergency temporary custody order for lack of jurisdiction. In that motion—which was not accompanied by any under-oath declaration or affidavit—Barnet alleged that before the child's birth, she had contacted an adoption attorney and arranged for Intervenors to adopt the child. Barnet alleged she had consented to Intervenors' adoption of the child on October 30, 2014, and Intervenors had obtained physical custody of the child on that same day.[2] Barnet attached to the motion to dismiss a copy of what she asserted was her consent to Intervenors' adoption of the child. Barnet further asserted the administrator of the Interstate Compact of the Placement of Children ("ICPC") had granted Intervenors permission to leave Arizona with the child and return to their home in New York and that the child was currently living with Intervenors in New York. *See* A.R.S. §§ 8-548 to –548.06 (Supp. 2015) ("Arizona ICPC").

¶5        Of significance to this appeal, Barnet also asserted Intervenors had initiated adoption proceedings in New York on October 30, 2014. Barnet further asserted the New York court had "already begun

_____

[2]At a subsequent evidentiary hearing, *see infra* ¶ 9, Barnet, through counsel, asserted Intervenors left Arizona with the child on November 1, 2014.

proceedings regarding the adoption process" and had ordered Ramirez to appear before it on January 14, 2015, if he wished to contest Intervenors' adoption of the child. And, relying on the UCCJEA, A.R.S. § 25-1002(7)(b), she argued New York was the child's "home state" and New York, not Arizona, had jurisdiction "to hear this matter."

¶6        At the November 19, 2014 return hearing, Barnet, through counsel, disputed that Ramirez was the child's father. She also asserted—and Ramirez's counsel confirmed—that at the beginning of the hearing Ramirez had been served with "paperwork" regarding the New York adoption proceeding and had been ordered by a court in New York to appear at a January 14, 2015 hearing if he wished to contest Intervenors' petition to adopt the child. Ramirez argued, however, that even though Intervenors had filed a petition to adopt the child in New York, Arizona, and not New York, had jurisdiction over the case because the child was in Arizona when he filed the paternity petition and, thus, Arizona was the child's "home state" under the UCCJEA.

¶7        At the conclusion of this hearing, the family court judge informed the parties she would conduct a conference with Intervenors' counsel and the New York court "as soon as possible" pursuant to the UCCJEA. *See* A.R.S. § 25-1010 ("A court of this state may communicate with a court in another state."). For reasons not disclosed by the record, that conference did not occur. On December 15, 2014, the family court judge then assigned to the matter entered an order setting an evidentiary hearing for April 2, 2015, before a different family court judge. In the order setting the evidentiary hearing, the family court judge explained she was unwilling to rule on Barnet's motion to dismiss

> without an evidentiary hearing at which [Barnet] may provide more specific information regarding the birth of the child, the initiation of adoption proceedings in New York, the current status of that proceeding and case information for those proceedings, including case name, number, identification of the specific court and judicial officer handling the case. [Barnet] shall also be prepared to provide this Court with proof of the agency utilized to effectuate the transfer of the child, pursuant to A.R.S. [§] 8-548 *et seq.*, and the proof of identity of the child's biological father as required by A.R.S. [§] 8-548(b)(2).

4

The family court judge also informed the parties that at the conclusion of the April 2, 2015 hearing, the family court would decide whether it should conduct a UCCJEA conference with the New York court before ruling on Barnet's motion to dismiss.[3]

¶8            In February 2015, Ramirez moved to accelerate the evidentiary hearing scheduled for April 2, 2015. Barnet opposed the motion to accelerate and requested that the court vacate the April hearing. Asserting Ramirez had failed to appear in the New York adoption proceeding and the New York court had entered an order on February 3, 2015, granting Intervenors' petition to adopt the child, Barnet argued the New York court's adoption order was entitled to full faith and credit and, thus, there was "nothing left to contemplate or decide." The family court denied Ramirez's motion to accelerate the hearing.

¶9            At the April 2015 evidentiary hearing, Ramirez acknowledged he had not appeared at the January 14, 2015 New York adoption proceeding to contest Intervenors' petition to adopt the child. He also conceded the New York court had entered an order on February 3, 2015, granting Intervenors' petition to adopt the child. Nevertheless, he argued the New York adoption order was invalid because Arizona was the child's home state when he filed the paternity petition. Ramirez also testified at the hearing and explained why he believed he was the child's father and explained that he and Barnett had planned to raise the child together.[4]

¶10          Following the April 2015 hearing, the family court found that when Ramirez filed his paternity petition, it had home state jurisdiction under the UCCJEA to make an initial child custody determination. Because a UCCJEA conference with the New York court had not been held, the family court informed the parties it would schedule such a conference with the New York court and, after the conference, would rule on Barnet's motion to dismiss. Subsequently, the family court granted Barnet's motion to dismiss (the "dismissal order"). In the dismissal order, the family court explained its staff had contacted the New York court and had been informed that the "[New York court did] not believe [it had] jurisdiction any longer over the adoption case as the adoption [had been] completed

---

[3]The family court judge also stayed the temporary order until further order of the court.

[4]Barnett did not appear at the April 2, 2015 evidentiary hearing.

and [there were] no set of circumstances where a DNA Test would be ordered." Given this, the family court determined it did not have "jurisdiction or authority to take any action over" the child and no basis to determine if Ramirez was the child's father.

¶11        After Ramirez appealed the family court's dismissal order, this court granted Intervenors' motion to intervene in the appeal. Although Intervenors' filed an answering brief, Barnet did not.

### DISCUSSION

¶12        Ramirez argues the family court should not have dismissed his paternity petition because it had jurisdiction over his petition under the UCCJEA. Even though Ramirez, Barnet, and indeed, the family court, relied solely on the UCCJEA, Intervenors argue we do not need to address Ramirez's UCCJEA jurisdictional argument because the dispositive issue presented in this appeal is whether the New York adoption order is entitled to full faith and credit under the PKPA. Although we agree with Intervenors that the PKPA and not the UCCJEA governs the full faith and credit issue presented in this appeal, we disagree with them that the PKPA required the family court to give full faith and credit to the New York adoption order. Further, we agree with Ramirez that the family court had jurisdiction over his paternity petition under the UCCJEA, and therefore, should not have dismissed it.[5]

I.      Full Faith and Credit Under the PKPA

¶13        Congress enacted the PKPA to provide uniformity among states in the enforcement of custody orders. *J.D.S.*, 182 Ariz. at 88, 893 P.2d at 739 (citing *Thompson v. Thompson,* 484 U.S. 174, 181, 108 S. Ct. 513, 517, 98 L. Ed. 2d 512, 518 (1988)). "[T]he PKPA does not grant or withhold jurisdiction, but only specifies which state decrees are entitled to enforcement." *Id.* (citing Anne B. Goldstein, *The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act*

---

[5]Intervenors' full faith and credit argument and Ramirez's UCCJEA jurisdictional argument raise issues of law. Thus, we exercise de novo review. *See Grynberg v. Shaffer*, 216 Ariz. 256, 257, ¶ 5, 165 P.3d 234, 235 (App. 2007) (reviewing issue of full faith and credit de novo) (citations omitted); *see also J.D.S. v. Franks,* 182 Ariz. 81, 89, 893 P.2d 732, 740 (1995) (whether court has jurisdiction under the UCCJEA is question of law reviewed de novo) (citation omitted).

*and the Parental Kidnapping Prevention Act,* 25 U.C. Davis L. Rev. 845, 925 (1992)). The PKPA principally focuses on when full faith and credit must be given to a state's custody determination. The PKPA directs that a state must enforce, and may not modify, any custody determination made "consistently" with the PKPA by another state court. 28 U.S.C.A. § 1738A(a). And, the PKPA bars a state from exercising jurisdiction in a custody proceeding when a custody proceeding is pending in another state and that state is "exercising jurisdiction consistently" with the PKPA. 28 U.S.C.A. § 1738A(g).[6]

¶14        Although Ramirez's paternity action was governed by the UCCJEA, A.R.S. § 25-1002(4) (defining "child custody proceeding" as including a paternity proceeding), the UCCJEA does not govern adoption proceedings. *See* A.R.S. § 25-1003; N.Y. Dom. Rel. Law § 75-b (McKinney 2002). Thus, as Intervenors argue, the parties and the family court should have looked to the PKPA to decide whether the New York adoption order was entitled to full faith and credit. *J.D.S.,* 182 Ariz. at 88, 893 P.2d at 739; *In re Baby Girl F.,* 932 N.E.2d 428, 436-37 (Ill. App. Ct. 2008) (UCCJEA does not apply to adoption proceedings; thus, PKPA governed dispute between birth mother and adoptive parents as to whether Illinois was required to give full faith and credit to South Carolina Supreme Court decision affirming order entered in South Carolina granting adoptive parents temporary custody of child).

¶15        As discussed above, *see supra* ¶ 13, the PKPA directs when a state must give full faith and credit to another state's custody determination, 28 U.S.C.A. § 1738A(a), and when it must refrain from exercising jurisdiction in a custody proceeding. 28 U.S.C.A. § 1738A(g). On appeal, Intervenors focus only on the former and ignore the latter. But, on the record before us, the New York court was barred from exercising jurisdiction over the child under 28 U.S.C.A. § 1738A(g), and thus the family court was not required to give full faith and credit to the New York adoption order.

¶16        Section 1738A(g) bars a state from exercising jurisdiction when a party "commence[s]" a custody proceeding in that state if a custody

---

[6]The parties also refer to the ICPC, which "is primarily procedural, providing a system of coordination among the states when a child born in one state is placed for adoption in another state." *J.D.S.,* 182 Ariz. at 89, 893 P.2d at 740 (citation omitted). The parties correctly agree, however, that the ICPC does not provide a basis for deciding the issues raised in this appeal. *Id.* at 92-93, 893 P.2d at 743-44.

proceeding is pending in another state (the "first state"), and the court in the first state is "exercising jurisdiction consistently with the provisions" of the PKPA. Specifically, 28 U.S.C.A. § 1738A(g) provides:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

**¶17**         As discussed above, Ramirez filed his paternity petition on October 30, 2014. Although the record on appeal contains no evidence that Intervenors petitioned to adopt the child in New York on or before October 30,[7] they assert they "commenced" the adoption proceeding in New York when Barnet signed the consent for adoption in Arizona on October 30, 2014. We reject that argument.

**¶18**         The PKPA does not define "commenced" or "pendency." Given this definitional silence, courts look to the law of the state where the action has been brought to determine the commencement and pendency of a proceeding. *See In re B.B.R.,* 566 A.2d 1032, 1040 n.25 (D.C. 1989) (citing Russell M. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement,* 66 Minn. L. Rev. 711, 773 (1982) ("Courts should construe [28 U.S.C.A. § 1738A(g)] to allow each state's law to determine when a proceeding in that state is commenced or begins its pendency.")); *see also* David Carl Minneman, Annotation, *Pending Proceeding in Another State as Grounds for Declining Jurisdiction Under § 6(a) of the Uniform Child Custody Jurisdiction Act (UCCJA) or the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A(g),* 20 A.L.R. 5th 700, §§ 22-26 (1994) (discussing cases holding that whether an action is commenced for purposes of the PKPA or

---

[7]After this appeal was at issue, this court ordered Intervenors to file with this court certified copies of the docket and all filings made in the New York adoption proceeding. The New York court denied Intervenors' motion for release of these records, and thus, Intervenors were unable to comply with this court's order.

the UCCJA[8] is determined by reference to the relevant state's procedural rules).

¶19 In New York, an adoption proceeding is "deemed filed" when the clerk of the court receives the required filings. *See* N.Y. Dom. Rel. Law § 115 (1)(a) (McKinney 2008) (private placement adoptions shall be "effected in the same manner" as adoptions from authorized agencies); N.Y. Dom. Rel. Law §§ 112 to -112-a(1) (McKinney 2005) (authorized agency adoption shall be "deemed filed" upon clerk of the court's receipt of designated documents which include petition and necessary consents); N.Y. C.P.L.R. 304, 2102 (McKinney 2008). Similarly, in Arizona, an adoption proceeding is commenced when the adoption petition is filed. *See* A.R.S. §§ 8-104, 8-108 to -109 (2014); Ariz. R.P. Juv. Ct. 79. And, similarly, in Arizona, a paternity proceeding begins when the paternity petition is filed with the court. A.R.S. § 25-806 (Supp. 2015); *see also* A.R.S. § 25-1002(5) (proceeding commenced under UCCJEA when first pleading filed); Ariz. R. Fam. Law. P. 23 (family law action commenced by filing petition with clerk of the court). Thus, under the law of either state, merely signing a consent to adopt does not "commence" an adoption proceeding or make it pending. As noted above, the record before us contains no evidence Intervenors *filed* the adoption proceeding in New York on or before October 30, 2014—the day Ramirez filed the paternity petition in Arizona. Therefore, in accordance with Arizona law and under 28 U.S.C.A. § 1738A(g), Ramirez's paternity action was pending in Arizona before Intervenors "commenced" the adoption proceeding in New York. Arizona was the first state under 28 U.S.C.A. § 1738A(g).

¶20 Intervenors, nevertheless, argue the family court was obligated to give the New York adoption order full faith and credit under the PKPA because New York entered the first "custody determination"[9] concerning the child. 28 U.S.C.A. § 1738A(a) (state "shall enforce" and not modify, except as authorized by the PKPA, custody determination made consistently with the PKPA). In making this argument Intervenors

---

[8]The UCCJA preceded the UCCJEA. *See generally Welch-Doden v. Roberts*, 202 Ariz. 201, 206-08, ¶¶ 24-32, 42 P.3d 1166, 1171-73 (App. 2002).

[9]Under the PKPA, a custody determination "means a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C.A. § 1738A(b)(3).

acknowledge the family court entered the emergency temporary order on November 6, 2014—well before the New York court entered the adoption order. But they argue the emergency temporary order was void because the family court did not have jurisdiction to issue it, and therefore, the New York adoption order was the first-in-time "custody determination" under the PKPA and entitled to full faith and credit. The full faith and credit issue, however, does not turn on the validity of the family court's temporary order.[10] Rather, the full faith and credit issue presented here turns on the date Ramirez "commenced" the Arizona paternity proceeding. This is because the jurisdictional bar imposed by 28 U.S.C.A. § 1738A(g) applies even when the first state has not yet made a custody determination.

**¶21**        Section 1738A(g) prohibits a state court from exercising jurisdiction in any custody or visitation proceeding "commenced" in that state "during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination." As other courts have recognized, the jurisdictional bar imposed by 28 U.S.C.A. § 1738A(g) applies when a proceeding is pending in the first state and the petitioner in that proceeding is asking the court to enter a custody or visitation determination. *Ex Parte D.B.*, 975 So. 2d 940, 955 (Ala. 2007) (28 U.S.C.A. § 1738A(g)'s jurisdictional bar applies even when the first state has not yet entered a custody determination); *B.B.R.*,

---

[10]Intervenors argue the temporary order was void because, pending a judicial determination of paternity, A.R.S. § 25-817 (Supp. 2015) only authorizes a court to issue a temporary custody or parenting time order under certain circumstances, none of which they assert existed here. Although the record does not reflect these conditions existed before the family court entered the temporary order, that order was not void, albeit arguably erroneous; an erroneous order or judgment is voidable, not void. A judgment or order is void only if the court lacks jurisdiction over the parties, jurisdiction over the subject matter, or jurisdiction to render the particular judgment or order entered. *Cockerham v. Zikratch*, 127 Ariz. 230, 234-35, 619 P.2d 739, 743-44 (1980); *Martin v. Martin*, 182 Ariz. 11, 15, 893 P.2d 11, 15 (App. 1995). Recognizing this, Intervenors argue the temporary order was void because the family court did not have jurisdiction to render it unless the statutory conditions were met. In making this argument, Intervenors cite *Thornsberry v. Superior Court*, 146 Ariz. 517, 707 P.2d 315 (1985). But, in *Thornsberry*, the superior court lacked jurisdictional authority to act in a class of cases. *Id*. In contrast, A.R.S. § 25-817 authorized the court to issue temporary orders in pending paternity actions subject to certain requirements.

566 A.2d at 1037 n.13 (under 28 U.S.C.A. § 1738A(g), if proceeding was pending in California when proceeding was filed in District of Columbia and California court was exercising jurisdiction consistently with the PKPA, then District was "precluded from proceeding with any action" concerning child; 28 U.S.C.A. § 1738A(g) "establishes a first-in-time rule for determining which state's jurisdiction is to be exclusive"); *Matter of C.A.D.*, 839 P.2d 165, 172-73 (Okla. 1992) (28 U.S.C.A. § 1738A(g)'s jurisdictional bar does not require first state to have issued an enforceable order before second state is barred from proceeding; "This principle prevents two or more states from exercising concurrent jurisdiction and discourages an interstate race for a more favorable forum.") (emphasis omitted); *In re Marriage of Payne*, 899 P.2d 1318, 1323 (Wash. Ct. App. 1995) (under 28 U.S.C.A. § 1738A(g), pendency of custody proceeding in first state bars court in second state from exercising jurisdiction). Further, construing 28 U.S.C.A. § 1738A(g) to require the first state to have made a custody determination would render the words of that section—"is exercising jurisdiction . . . to make a custody" determination—meaningless.

¶22    Accordingly, 28 U.S.C.A. § 1738A(g)'s jurisdictional bar was triggered when Ramirez filed his paternity petition. Thus, if the family court was exercising jurisdiction "consistently" with the PKPA, then the family court was not required to give full faith and credit to the New York adoption order.[11]

¶23    A state court exercises jurisdiction "consistently with the provisions" of the PKPA if, first, as required by 28 U.S.C.A. § 1738A(c)(1), it has jurisdiction under its own laws ("the state law requirement"), and

_____

[11]To the extent Intervenors rely on *Baby Girl F.*, 932 N.E.2d 428, in arguing that only the first "custody determination" is entitled to full faith and credit, we disagree. Although *Baby Girl F* held a South Carolina "order" was the first custody determination, the question before the court was whether the South Carolina court was entitled to *modify* a prior Illinois guardianship order. *Id.* at 440 (emphasis added). The court held the Illinois guardianship order did not constitute a "custody determination" because there were "*no pleadings filed* in connection with the [guardianship] proceeding[.]" *Id.* at 438-39 (emphasis added). The South Carolina adoption petition was the *first pleading filed*. *Id.* at 431. This is consistent with our conclusion, and the authorities cited in the text, that under 28 U.S.C.A. § 1738A(g), the court must first determine whether a custody proceeding is pending in another state.

second, as required by 28 U.S.C.A. § 1738A(c)(2), it has jurisdiction under one of the PKPA jurisdictional provisions ("the PKPA jurisdictional provisions"). Under the PKPA jurisdictional provisions, the state must be the child's home state when the proceeding commenced, or the child's home state within six months before the proceeding commenced if certain additional requirements are met ("home state jurisdictional provision"), 28 U.S.C.A. § 1738A(c)(2)(A),[12] or, if no state is the child's home state, the state must have jurisdiction under one of the four other jurisdictional provisions in 28 U.S.C.A. § 1738A(c)(2).[13]

**¶24** On appeal, Intervenors have not challenged the family court's exercise of jurisdiction under the PKPA's state law requirement, even though the jurisdictional requirements of the PKPA and the UCCJEA are similar.[14] Thus, they have not argued the family court did not have jurisdiction of Ramirez's paternity action under the UCCJEA. Instead, they argue the family court was required to give full faith and credit to the New York adoption order because the child had no home state under the PKPA and, thus, under the PKPA alternative jurisdictional provision relevant

---

[12]Section 1738A(c)(2)(A) reads in full as follows:

> [S]uch State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State.

[13]As is clear from the wording of 28 U.S.C.A. § 1738A(c)(2), the PKPA prioritizes home state jurisdiction over the four alternative jurisdictional provisions contained in that section. The UCCJEA also prioritizes home state jurisdiction. *See generally Welch-Doden*, 202 Ariz. at 206-08, ¶¶ 24-32, 42 P.3d at 1171-73 (App. 2002).

[14]For example, in the case of a child less than six months old, the PKPA defines home state as the state "in which . . . the child lived from birth with his parents, a parent, or a person acting as a parent." 28 U.S.C.A. § 1738A(b)(4). Section 25-1002(7)(b) of the UCCJEA contains nearly identical language.

here, the "best interests" provision contained in 28 U.S.C.A. § 1738A(c)(2)(B), only New York, and not Arizona, could exercise jurisdiction over the child consistent with the PKPA. As we understand their argument, any action taken by the family court in connection with Ramirez's paternity petition would not be consistent with the provisions of the PKPA, and thus the New York adoption proceeding was exempt from 28 U.S.C.A. § 1738A(g)'s jurisdictional bar. As we explain, even assuming the child did not have a home state under the PKPA, the New York adoption proceeding was still subject to 28 U.S.C.A. § 1738A(g).

¶25        The PKPA defines home state as the state

> in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months, and *in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.* Periods of temporary absence of any of such persons are counted as part of the six-month or other period.

28 U.S.C.A. § 1738A(b)(4) (emphasis added).

¶26        Relying on the italicized language in the definition of home state quoted above, Intervenors argue the child had no home state under the PKPA because at the commencement of the proceeding the child had not "lived from birth" with a person identified in the definition of home state.[15] In support, Intervenors cite authorities that have interpreted the PKPA's definition of home state for a child less than six months old to mean that a baby born in one state and transported shortly after birth to another state has no home state. *See Adoption of Zachariah K.*, 8 Cal. Rptr. 2d 423, 430 (Cal. Ct. App. 1992); *B.B.R.*, 566 A.2d at 1038; *Baby Girl F.*, 932 N.E.2d at 440; *Matter of Adoption of Child by T.W.C.*, 636 A.2d 1083, 1088-89 (N.J. Super. Ct. App. Div. 1994). As one commentator has explained:

---

[15]In making this argument, Intervenors have not specified which proceeding—Ramirez's paternity proceeding or their adoption proceeding—they are referring to. But, based on the authorities they have cited in support of this argument, the crux of their argument is that the child had not lived from birth in either Arizona or New York vis-à-vis either proceeding.

> [I]n order for a child less than six months old at the commencement of the proceedings to satisfy the definition of "home state" under . . . the PKPA, the child must have "lived from birth" in a state with a parent or a person acting as a parent. Almost by definition, an infant involved in interstate adoption proceedings will not satisfy that condition: a child that is born to biological parents in one state and then is shortly thereafter placed with prospective adoptive parents in another state has not "lived from birth" in either state. Most courts to address this issue have interpreted the "home state" definition in this literal manner. Most adopted infants have no "home state" under . . . the PKPA.

Greg Waller, *When the Rules Don't Fit the Game: Application of the Uniform Child Custody Jurisdiction Act and the Parental Kidnaping Prevention Act to Interstate Adoption Proceedings*, 33 Harv. J. on Legis., 271, 289–90 (1996) [hereinafter "Waller"].

¶27　　　Assuming without deciding the child had no home state, the applicable PKPA alternative ground for jurisdiction, the best interest provision contained in 28 U.S.C.A. § 1738A(c)(2)(B), entitled the family court to exercise jurisdiction over the child and thus the family court's exercise of jurisdiction over the child was consistent with the PKPA as 28 U.S.C.A. § 1738A(g) requires. When there is no home state, a state will exercise jurisdiction to make a custody determination consistent with the PKPA if it is in the "best interest of the child" for that state to assume jurisdiction because "the child and his parents, or the child and at least one contestant,[16] have a significant connection with such State other than mere physical presence" and "substantial evidence" is available in that state "concerning the child's present or future care, protection, training and personal relationships."[17] 28 U.S.C.A. § 1738A(c)(2)(B). To determine

---

[16]Under the PKPA, "'contestant' means a person, including a parent or grandparent, who claims a right to custody or visitation of a child." 28 U.S.C.A. § 1738A(b)(2).

[17]The UCCJEA contains a similar jurisdictional provision, *see* A.R.S. § 25-1031(A)(2), although that provision does not refer to a child's best interests.

whether a child has a significant connection to a state, courts consider a variety of factors, including the nature and quality of the child's contacts with the state, the nature and quality of the parent or contestant's contacts with the state, and, consistent with the statutory language, the nature and quality of the evidence concerning the child's present or future care, protection, training, and personal relationships. *See B.B.R.,* 566 A.2d at 1038-39; *T.W.C.,* 636 A.2d at 1089; *Zachariah K.,* 8 Cal. Rptr. 2d at 430 (citation omitted).

¶28      Applying these considerations here, the child was born in Arizona, to a resident Arizona birth mother. At the evidentiary hearing, Ramirez testified about his relationship to Barnet and their plans to raise and care for the child as their son. Further, the child would have remained in Arizona if Intervenors had not taken him to New York. And, based on his testimony at the evidentiary hearing, Ramirez, an Arizona resident, presented a colorable claim to being the child's father.

¶29      We acknowledge Intervenors and the child have similar connections to New York. Barnet consented to the child's adoption, and the record reflects she understood Intervenors intended for the child to live with them in New York. And, of course, Intervenors have relevant information regarding the child and the adoption order entered in New York. Although, in our view, both states have similar significant connections and substantial relevant evidence is available in both states,[18] the PKPA prohibits the exercise of concurrent jurisdiction by requiring that a state abstain from exercising jurisdiction when proceedings concerning the same child are pending in another state. 28 U.S.C.A. § 1738A(g). In that situation—when no state is a child's home state and two states could assume jurisdiction under the best interest provision contained in 28 U.S.C.A. § 1738A(c)(2)(B)—but only one state may properly exercise jurisdiction, the first state under 28 U.S.C.A. § 1738A(g) will have exclusive jurisdiction. *See B.B.R.,* 566 A.2d at 1039 n.23 (discussing cases and authorities). As one commentator has explained:

> In nearly all interstate adoption cases, both the
> state of the natural parents and the state of the
> adoptive parents could be found to satisfy the

---

[18]*Zachariah K.,* 8 Cal. Rptr. 2d at 430, concluded both states had significant connections when the child was born in California and taken to Oregon days later. Similarly, *T.W.C.,* 636 A.2d at 1089 (citations omitted), recognized that the child may have a significant connection to the birth state in addition to the state where he has lived with the adoptive parents.

"significant connection" and the "substantial
evidence" requirements . . . . Though either state
could be found to have jurisdiction under
the . . . PKPA, only one state may exercise
jurisdiction at a time . . . . Thus, because the
"home state" concept, as drafted, does not
accommodate the practical elements of
interstate infant adoptions, infant adoption
cases under the . . . PKPA are functionally
governed by a "race-to-the-courthouse" rule of
jurisdiction. In short, when the . . . PKPA is
applied to the typical interstate infant adoption
case, neither state will satisfy "home state"
jurisdiction and both states will satisfy "best
interest" jurisdiction. Since only one state may
properly exercise jurisdiction, the first to file
will be the winner of the jurisdictional battle.

Waller, *supra* ¶ 26, at 290-91. Further, when, as here, two states have
significant connections, a court should not, as Intervenors acknowledge,
weigh one state's connections against the other state's connections. *See*
*B.B.R.*, 566 A.2d at 1039 n.23; *T.W.C.*, 636 A.2d at 1089.

**¶30**        Even though Intervenors acknowledge a court should not
weigh one state's significant connections against another state's significant
connections, they stress that the child has lived with them his "entire life—
but for the circumstances of his birth." In stressing that point, Intervenors
are implicitly suggesting that the relevant time for measuring significant
connections is the present, and not when Ramirez filed his paternity action
or even when they filed their adoption proceeding. We disagree with that
suggestion, and agree with the court in *B.R.R.*, 556 A.2d at 1040, that

[j]urisdiction is an initial and key element to be
determined in any judicial proceeding and to
make it a shifting, chameleon-like issue would
be counter not only to normal legal principles
but also to the structure of the [PKPA]. Thus, in
subsection (A), "home State" status is
determined as of the "commencement of the
proceeding," . . . and we see no reason why the
same should not apply to [28 U.S.C.A.
§ 1738A(c)(2)(B)]. Furthermore, we cannot
believe that the [PKPA] contemplates an

approach that would enable a contesting party, particularly where wrongdoing is involved, to build up connection time in his or her state, thereby frustrating one of Congress' purposes in enacting the PKPA—to "deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards."

¶31      In sum, Ramirez's paternity proceeding was pending in the family court in Arizona, and the family court was exercising jurisdiction consistently with the PKPA, before the New York court issued the adoption order. Under 28 U.S.C.A. § 1738A(g), the New York court was barred from exercising jurisdiction over the child and the New York adoption order is not entitled to full faith and credit.[19]

II.    Jurisdiction Under the UCCJEA

¶32      As noted, Ramirez argues the family court should not have dismissed his paternity petition under the UCCJEA. And, as noted above, Intervenors have not challenged the family court's jurisdiction under the UCCJEA even though the jurisdictional bar imposed by 28 U.S.C.A. § 1738A(g) requires a state court to have jurisdiction under its own laws. *See supra* ¶¶ 23-24. Given this requirement, however, we briefly address the family court's jurisdiction over Ramirez's paternity action under the UCCJEA.

¶33      First, Ramirez filed his paternity proceeding in compliance with the UCCJEA, and the UCCJEA governed his paternity proceeding. *See supra* ¶ 14. Second, given that the definition of home state under the UCCJEA is virtually identical to the PKPA's definition of home state, even

---

[19]Both parties refer to the family court's failure to hold a UCCJEA conference with the New York court. The family court failed to meet its obligation to hold such a conference in a timely manner and failed to expedite the paternity test or the trial. *See* A.R.S. § 25-807(A) (Supp. 2015) (paternity proceedings have precedence over civil matters and court must set a trial within 60 days from the respondent's answer). These failures do not affect our holding that 28 U.S.C.A. § 1738A(g) barred the New York court from exercising jurisdiction over the child, and the New York adoption order is not entitled to full faith and credit.

if we assume the child had no home state under the UCCJEA when Ramirez filed the paternity petition,[20] for the reasons discussed in ¶ 28 *supra*, the family court had jurisdiction to make an initial custody determination under the UCCJEA's "substantial connection" provision. *See* A.R.S. § 25-1031(A)(2); *see also Ariz. Dep't of Econ. Sec. v. Grant ex rel. Maricopa Cty.,* 232 Ariz. 576, 307 P.3d 1003 (App. 2013) (discussing UCCJEA substantial connection provision). Accordingly, the family court had jurisdiction over Ramirez's paternity petition under the UCCJEA and should not have dismissed it.

### CONCLUSION, REMAND, AND COSTS ON APPEAL

**¶34** The New York court entered the adoption order in violation of 28 U.S.C.A. § 1738A(g), and, therefore, the New York adoption order was not entitled to full faith and credit. Further, the family court had jurisdiction over Ramirez's paternity proceeding under the UCCJEA and should not have dismissed it. We thus reverse the family court's order dismissing Ramirez's paternity petition and remand to the family court for further proceedings consistent with this opinion. On remand, the family court shall order Ramirez to properly serve Intervenors in the paternity proceeding. Furthermore, the family court shall order Ramirez and the child to submit to a paternity test pursuant to A.R.S. § 25-807. *See* A.R.S. § 25-1031(C) ("Physical presence or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody decision."); *cf. Taylor v. Jarrett,* 191 Ariz. 550, 552, ¶ 8, 959 P.2d 807, 809 (App. 1998) ("[U]nder the UCCJA, an Arizona court need not secure personal jurisdiction over a non-resident party in order to adjudicate custody and visitation issues.").[21] If the

---

[20]Several state courts have held that under the UCCJEA's definition of home state, a baby born in one state and transported shortly after birth to another state has no home state. *See Adoption House, Inc. v. A.R.,* 820 A.2d 402 (Del. Fam. Ct. 2003); *Carl v. Tirado,* 945 A.2d 1208 (D.C. 2008); *In re D.S.,* 840 N.E.2d 1216 (Ill. 2005); *In re A.W.,* 94 A.3d 1167 (Vt. 2014); *see generally* Andrea Charlow, *There's No Place Like Home: Temporary Absences in the UCCJEA Home State*, 28 J. Am Acad. Matrim. Law. 25, 38 (2015).

[21]The Comment to UCCJEA § 201, which is identical to A.R.S. § 25-1031, states: "Personal jurisdiction over, or the physical presence of, a parent or the child is neither necessary nor required under this Act. In other words, neither minimum contacts nor service within the State is required for the court to have jurisdiction to make a custody determination." UCCJEA, § 201, cmt. 2 (Unif. Law Comm'n 1997); *See also* Joan M.

test results confirm Ramirez's paternity, the family court may, in the proper exercise of its discretion, initiate a conference with the New York court to consider whether to continue exercising jurisdiction under the UCCJEA. *See generally* A.R.S. § 25-1037 (inconvenient forum). Finally, as the successful party on appeal, we award Ramirez costs on appeal contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342 (2016).



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

Shaughnessy, *The Other Side of the Rabbit Hole: Reconciling Recent Supreme Court Personal Jurisdiction Jurisprudence with Jurisdiction to Terminate Parental Rights*, 19 Lewis & Clark L. Rev. 811, 813 (2015).