NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

CHARLES RUSSELL WILLIAMS, *Petitioner/Appellant*,

*v.*

KARIMA HADDAD, *Respondent/Appellee*.

No. 1 CA-CV 18-0746 FC
FILED 9-12-2019

Appeal from the Superior Court in Maricopa County
No. FC2018-091883
The Honorable Laura M. Reckart, Judge

**AFFIRMED**

COUNSEL

Schill Law Group, PLLC, Scottsdale
By John Schill
*Counsel for Petitioner/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1             Petitioner/Appellant Charles Russell Williams ("Father") appeals the superior court's order dismissing his petition to establish legal decision making and parenting time and his petition to enforce a physical child custody order.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2             Father and Respondent/Appellee Karima Haddad ("Mother"), who never married, are the parents of two minor children. Mother is a Dutch citizen and both children were born in the Netherlands and lived there with Mother.  Father is an American citizen who resides in Arizona.

¶3             At the end of June 2018, Mother and the children came to Arizona and stayed with Father at his home.  Father asserts that Mother planned to move with the children to Arizona at that time, but Mother denied that she or the children ever lived or intended to live in Arizona.

¶4             On July 2, 2019, Father obtained an order of protection against Mother in favor of himself and the children, claiming that Mother had attacked him with a knife in front of the children and had previously abused the children.  Father also initiated the underlying action with a petition to establish legal decision making and parenting time.  The superior court granted Father's ex parte request for temporary emergency legal decision making and physical custody of the children.  The following day, the court entered an order directing Mother to produce the children to Father or a law enforcement agency.  Mother immediately left Arizona with the children and ultimately returned to the Netherlands.

¶5             Although it is unclear from the record whether Mother was served with the order of protection and petition for temporary legal decision making and physical custody, she appeared and testified telephonically at the court's return hearing on the temporary orders.  After

the hearing, the court entered an order establishing Father's paternity and extended the temporary orders.

¶6        Mother then moved to dismiss Father's petition to establish legal decision making and parenting time and the court's temporary orders, claiming that because the children were born and raised in the Netherlands and had spent less than one month in Arizona, the court lacked jurisdiction to enter custody orders under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in Arizona Revised Statutes ("A.R.S.") sections 25-1001 to -1067.

¶7        Father argued that Mother had waived service and entered a general appearance by participating telephonically in the return hearing and therefore could not contest the court's jurisdiction.  He also asserted that the superior court had jurisdiction under A.R.S. § 25-1031(A)(2) or 25-1031(A)(3) because no other court would take jurisdiction of the case and the children have significant contacts with Arizona.  He further maintained jurisdiction was proper because Arizona was the children's "habitual residence," and Arizona had an interest in protecting the children of an Arizona citizen who are of tender years and unable to protect themselves from Mother's alleged abuse.

¶8        The superior court ruled it lacked jurisdiction and granted the motion to dismiss.  Father timely appealed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## ISSUES

¶9        Father argues the superior court erred in dismissing his petition to establish legal decision making and parenting time because Mother subjected herself and the children to Arizona's jurisdiction and Arizona statutory law grants the court jurisdiction.  He further contends the court abused its discretion by not holding a hearing and making a factual determination regarding whether Arizona is the children's habitual residence.

## DISCUSSION

¶10        Whether a court has jurisdiction under the UCCJEA is a question of law that this court reviews *de novo*.  *In re Ramirez v. Barnet*, 241 Ariz. 145, 149, ¶ 12 n.5 (App. 2016).

I.      Personal Jurisdiction Over Mother

¶11        Father argues that Mother's telephonic appearance at the superior court's return hearing had the same effect as if she had been properly served with his petition to establish legal decision making and parenting time, *see* Arizona Rule of Family Law Procedure 40(f)(3), and, therefore, the court had jurisdiction over Mother and the children.[1] However, even assuming the superior court gained personal jurisdiction over Mother, her telephonic appearance alone would not have conferred jurisdiction on the court to consider Father's petition for legal decision making and parenting time.  "Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination."  A.R.S. § 25-1031(C).  Instead, the court must conduct a separate jurisdictional analysis under the UCCJEA.

II.      Jurisdiction Under the UCCJEA

¶12        The UCCJEA provides that a court "has jurisdiction to make an initial child custody determination" if any of the following are true:

> 1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> 2. A court of another state does not have jurisdiction under paragraph 1 or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 25-1037 or 25-1038 and both of the following are true:

---

[1]      Father also asserts that because Mother's appearance had the same effect as proper service of the petition, her removal of the children from the United States was wrongful under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), which the United States Congress implemented through the International Child Abduction Remedies Act, 22 U.S.C. § 9001 (formerly 42 U.S.C. § 11601).  We discuss the Hague Convention *infra*.

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

3. All courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 25-1037 or 25-1038.

A.R.S. § 25-1031(A).[2]

**¶13**        A "home state" is defined as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding, including any period during which that person is temporarily absent from that state."  A.R.S. § 25-1002(7)(a).  The evidence shows that the Netherlands has jurisdiction as the children's home state under § 25-1031(A)(1) because the children had lived there since birth.

**¶14**        Father does not dispute that the Netherlands is the children's home state but argues that Arizona has jurisdiction to make a custody determination under § 25-1031(A)(2) or 25-1031(A)(3) because the Netherlands will not consider a custody request from an unwed father unless the mother grants the father certain parental rights and the children have significant contacts with Arizona.  Those subsections, however, do not apply simply when a home state's custody laws may disadvantage a party.[3]  Rather, when Arizona is not a child's home state, an Arizona court may only exercise jurisdiction when the home state has declined jurisdiction on the basis that Arizona is the more appropriate forum.  A.R.S. § 25-1031(A)(2), (3).

---

[2]        Foreign countries are treated as if they are "state[s] of the United States" for purposes of resolving jurisdiction.  A.R.S. § 25-1005(A).

[3]        Although an Arizona court may decline to apply the UCCJEA if "the child custody law of a foreign country violates fundamental principles of human rights," A.R.S. § 25-1005(C), Father does not argue that this provision applies in this case.

**¶15** There is no evidence in the record that Father has asked a Dutch court to exercise jurisdiction over his custody petition or that it has declined to do so on the basis that Arizona is the more appropriate forum. Accordingly, this court will not consider whether Arizona could exercise jurisdiction under § 25-1031(A)(2) or 25-1031(A)(3). *See Welch-Doden v. Roberts*, 202 Ariz. 201, 205-06, ¶ 19 (App. 2002) (stating that when another state is a child's "home state," that state has initial jurisdiction "regardless of any significant connections" to the forum state); *see also Ariz. Dep't of Econ. Sec. v. Grant*, 232 Ariz. 576, 579-81, ¶¶ 7-12 (App. 2013) (holding Arizona court had jurisdiction under § 25-1031(A)(2) over children who did not have a "home state" as defined by § 25-1031(A)(1) and had "significant connections" to the state).

**¶16** We also reject Father's argument that Arizona became the children's home state under A.R.S. § 25-1034(B). That statute directs that when a court has issued temporary emergency orders concerning a child who is present in the state, and no custody proceeding is commenced in a court of a state that has jurisdiction under § 25-1031, the temporary order becomes a final determination "if it so provides and this state becomes the home state of the child." A.R.S. § 25-1034(B).

**¶17** Because the children did not remain in Arizona for at least six months, Arizona did not become their home state; therefore, the superior court's temporary order did not become a final determination.[4] Father's suggestion—that a state may achieve "home state" status merely by issuing temporary emergency orders even if the children do not remain in the forum state as long as a custody proceeding is not commenced in another state that has jurisdiction—is not consistent with the language of § 25-1034(B) and would contradict § 25-1031.

III.    The Hague Convention

**¶18** Finally, Father contends that the superior court erred by not holding a hearing to determine if Arizona was the children's "habitual residence."

**¶19** The issue of habitual residence, while not a consideration under the UCCJEA, is relevant to a petition under the Hague Convention for the return of children who have been wrongfully removed or retained.

---

[4] While the superior court extended the temporary orders "until further order of the [c]ourt," it did not provide that those orders would become a final determination.

The Hague Convention's "focus is not the underlying merits of a custody dispute but . . . whether a child should be returned to a country for custody proceedings under that country's domestic law." *Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007). Father first made his request that the superior court order the children be returned to Arizona under the Hague Convention in his response to Mother's motion to dismiss. Father's request was not brought in the proper forum. As a person seeking to initiate judicial proceedings under the Hague Convention for the return of a child, he must file a petition for such relief in a court "in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(b) (formerly 42 U.S.C.
§ 11603). Thus, the superior court did not err by not holding a hearing to determine whether Arizona was the children's habitual residence under the Hague Convention.

## CONCLUSION

¶20   For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

7