NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CHRISTOPHER M. KING, *Petitioner/Appellant*,

*v.*

TALANI J. BERTRAM, *Respondent/Appellee*.

No. 1 CA-CV 24-0399 FC
FILED 03-18-2025

Appeal from the Superior Court in Maricopa County
No. FC2022-005231
The Honorable James N. Drake Jr., Judge

**AFFIRMED**

COUNSEL

Law Office of Joseph T. Stewart PLLC, Phoenix, AZ
By Joseph T. Stewart
*Counsel for Petitioner /Appellant*

Talani Bertram, Valley Stream, NY
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Michael J. Brown and Judge Paul J. McMurdie joined.

---

**F O S T E R**, Judge:

**¶1** Petitioner Christopher King ("Father") appeals a legal decision-making and parenting time order granting Telani Bertram ("Mother") sole legal decision-making and primary custody of the parties' child ("Child").[1] Father argues the superior court failed to apply the standard for determining home state jurisdiction and that delays in establishing jurisdiction prejudiced him. Finding no legal error or abuse of discretion, this Court affirms for the reasons stated below.

## FACTS AND PROCEDURAL HISTORY

**¶2** The parties are unmarried and have one Child together.[2] In July 2021, Mother was pregnant; she came to Arizona from New York to start a Ph.D. program and live with Father. The parties jointly owned a home in Tucson, where Child was born in March 2022.

**¶3** Mother left Arizona with Child and returned to New York in May 2022. Mother and Child temporarily returned to Arizona in July 2022 to pack their things. They stayed in the parties' home with Father. Due to events that occurred during this visit, Mother obtained a protective order giving her exclusive use of the home. The order was later amended to include Child. Mother packed her things, put them in storage and returned to New York with Child shortly thereafter.

---

[1] Father briefly alleges that New York lacked jurisdiction to issue the child support order. Because he does not fully develop this argument with citations to the record or legal authority, this decision does not address it. *See Boswell v. Fintelmann*, 242 Ariz. 52, 54, ¶ 7 n.3 (App. 2017) ("Because [appellant] fails to develop and support his conclusory arguments . . . he waives them.").

[2] Father signed the birth certificate when Child was born, and by stipulation and genetic testing during this litigation paternity was confirmed.

¶4          On August 18, 2022, Father petitioned in Arizona to establish paternity, legal decision-making authority, parenting time and child support. He also filed two incomplete petitions for temporary orders, which the superior court rejected. Mother petitioned for custody in New York on October 6, 2022, before being served with Father's petition on January 4, 2023. She also petitioned for child support in New York on February 7, 2023.

¶5          Once Father learned of the New York custody petition, he asked the Arizona court to confer with the New York court to determine jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA"). Father asserted that Arizona was Child's home state because she was born and lived in the state within six months of the date Father filed his petition. *See* A.R.S. §§ 25-1031(A)(1), -1002(7)(b).

¶6          Mother moved to dismiss the Arizona proceeding, arguing Child had no home state and New York had jurisdiction because Child had more substantial connections there. The Arizona court set a UCCJEA conference with the New York court for March 24, 2023. For reasons not apparent in the record, the Arizona court rescheduled this conference to June 5, 2023.

¶7          At the UCCJEA conference, the Arizona court determined that a question of home state jurisdiction existed and encouraged the parties to find a convenient date for an evidentiary hearing. With no agreement on a hearing date, Father again asked the court to set a UCCJEA conference or rule on Mother's pending motion to dismiss.

¶8          The Arizona court noted the difficulty scheduling a UCCJEA conference with the New York court, noted its belief that Arizona was Child's home state and scheduled a trial on Father's petition to establish paternity, legal decision-making, parenting time and child support for October 2, 2023. The court reserved the first half of the day for an evidentiary hearing on the home state issue to make a final determination about jurisdiction. If the court determined Arizona had jurisdiction, the second half of the trial would address legal decision-making, parenting time and child support. A week after this order, Father moved for summary judgment on UCCJEA jurisdiction. The court denied the motion, stating it wanted to hear the evidence before deciding.

¶9          At the scheduled evidentiary hearing on jurisdiction and trial on the merits, the parties stipulated that Arizona was Child's home state and had jurisdiction. Furthermore, they agreed to temporary orders allowing Child to stay in New York with Mother and granting Father

supervised parenting time until January. After the parties failed to agree on permanent orders, the trial was set for April 1, 2024.

**¶10**       After the trial, the superior court found Father did not attempt to exercise any parenting time despite the temporary orders. The court addressed the best interests and relocation factors. *See* A.R.S. §§ 25-403(A), -408(I). The court found that under §§ 25-403(A)(8) and -403.03(A), Father had committed "significant domestic violence" and therefore awarded Mother sole legal decision-making authority. The court also allowed Child to live in New York with Mother and awarded Father gradually increasing parenting time after he completed three supervised visits in New York. The Arizona court did not enter a child support order because of an existing child support order in New York.

**¶11**       Father timely appealed, and this Court has jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶12**       Father argues that the superior court had jurisdiction under A.R.S. § 25-1031(A)(1) when he filed his petition, erred by delaying its ruling on jurisdiction and failed to order Mother to return Child to Arizona. This Court reviews *de novo* the superior court's subject matter jurisdiction under the UCCJEA and other questions of law. *Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 17 (App. 2017). "But to the extent a court's jurisdictional decision depends on its resolution of disputed facts, [this Court] will accept the court's findings if they are supported by reasonable evidence." *Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 429, ¶ 10 (App. 2021) (citation omitted). This Court reviews child custody and parenting time orders for an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013).

## I.    UCCJEA Jurisdiction.

**¶13**       Arizona and New York have enacted the UCCJEA. *See* A.R.S. §§ 25-1001 to -1067; N.Y. Dom. Rel. Law §§ 75 to 78-a. The UCCJEA provides that a state court has jurisdiction to make an initial custody determination if one of the following is true:

> 1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

2. A court of another state does not have jurisdiction under paragraph 1 or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 25-1037 or 25-1038 and both of the following are true:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships.

3. All courts having jurisdiction under paragraph 1 or 2 have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 25-1037 or 25-1038.

4. A court of any other state would not have jurisdiction under the criteria specified in paragraph 1, 2 or 3.

A.R.S. § 25-1031(A); *accord* N.Y. Dom. Rel. Law § 76(1).

¶14 When the child is under six months old, the UCCJEA defines the "home state" as "the state in which the child lived from birth with a parent or person acting as a parent, including any period during which that person is temporarily absent from that state." A.R.S. § 25-1002(7)(b); *accord* N.Y. Dom. Rel. Law § 75-a(7). The statute defines "commencement" as "the filing of the first pleading in a proceeding." A.R.S. § 25-1002(5); *accord* N.Y. Dom. Rel. Law § 75-a(5). Here, Child was less than six months old when Father filed his petition in August 2022. Father lived in Arizona when Child was born and continues to live here. Child lived with Father and Mother in Arizona until May 2022. Thus, under A.R.S. § 25-1002(7)(b), Arizona is the home state. Mother's move to New York in May 2022 did not defeat Arizona's jurisdiction because Arizona was the home state within six months of Father's August 2022 petition. *See* A.R.S. § 25-1031(A)(1); *Gutierrez*, 242 Ariz. at 266, ¶ 23.

## II. The Delay in Proceedings was Error.

¶15 Father contends that because the facts that supported the home state jurisdiction were undisputed the court erred in delaying the

ruling on jurisdiction. He also argues that the delay harmed his relationship with Child and, ultimately, negatively impacted the relocation decision.

**¶16** But the superior court's inexcusable delay in resolving the UCCJEA jurisdictional questions does not warrant reversal. This Court acknowledges that the four-month delay at the outset of this case resulted from Father's deficient petitions for temporary orders and failure to serve Mother. However, Father made multiple requests for the UCCJEA conference between the courts, asserting an urgent need for the courts to consider the fundamental parenting rights at stake along with Child's best interests. *See* A.R.S. § 25-1036(B) (when a proceeding has been commenced in another state, the court must stay the proceeding and "communicate with the court of the other state"); *see also* A.R.S. § 25-1057 (if an enforcement proceeding is started in this state and a modification proceeding is pending in another state with jurisdiction, the enforcing court must promptly contact the modifying court). By failing to hold a timely UCCJEA conference, the superior court abused its discretion by delaying the conference without reasonable justification.

**¶17** But Father's remedy for compelling a timely UCCJEA conference was to seek special action relief. *See Goff v. Superior Courts (Robinson)*, 2 Ariz. App. 344, 347 (1965) (a ruling on venue may be corrected by a special action "if an abuse of discretion is shown"); *see also Dunn v. Carruth*, 162 Ariz. 478, 479 (1989) ("[S]pecial action is an appropriate procedure for raising challenges to venue rulings."). He did not pursue such relief and it is simply too late to claim unnecessary delay (as opposed to lack of jurisdiction) at this point in the dispute. *See Backstrand v. Backstrand*, 250 Ariz. 339, 346, ¶ 29 (App. 2020) (courts balance due process with managing their dockets).

**¶18** Although the Arizona court should have conducted the UCCJEA much sooner, this Court will not reverse for technical error where no prejudice is shown. Ariz. Const. art. 6, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."); *see also In re the marriage of Dorman*, 198 Ariz. 298, 303, ¶ 12 (App. 2000). On appeal, this Court does not reweigh the evidence. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Instead, this Court affirms the superior court's orders if substantial evidence supports them. *Id*.

**III.    Father Was Not Prejudiced By Any Delay.**

**¶19** Father argues that the delay was prejudicial to his relationship with Child and resulted in the order allowing relocation. But a valid order of protection based on Father's conduct prevented Father's contact with Child until July 2023, a month after the superior court pushed for resolution of the home state issue. After the protective order expired, Father stipulated that Child could remain in New York under the temporary orders. This agreement significantly weakens Father's claim that the court's delay and the long distance prejudiced his ability to form a relationship. *Cf. Duwyenie v. Moran,* 220 Ariz. 501, 506, ¶¶ 16–17 (App. 2009) (the party stipulating to an order cannot object to the terms in that order on appeal).

**¶20** Father's claim of prejudice is also harmed by his failure to seek or arrange a visit, ask to speak with Child or request updates from Mother. Before this action commenced, Father declined a visit in Arizona for Father's Day in 2022. And after the commencement of the action, the superior court found that "Father took few, if any, steps" to see Child after the entry of temporary orders. The court also found Father not credible when he claimed he could not visit Child in New York because of financial constraints. Indeed, Father's lack of effort to develop a relationship with Child carried significant weight with the court.

**¶21** Father cites *Ramirez v. Barnet*, 241 Ariz. 145 (App. 2016), to support his position that he was prejudiced by delay justifying reversal. But *Ramirez* involved a very different fact pattern. There, the adoptive parents left Arizona and began adoption proceedings in New York. *Ramirez*, 241 Ariz. at 148, ¶¶ 4–5 & n.2. Simultaneously, the father filed a paternity action in Arizona. *Id.* at 147–48, ¶¶ 2, 5. The Arizona trial court dismissed the father's paternity action because after a delay in determining jurisdiction, the New York adoption had been completed even though the question of jurisdiction had not been resolved. *Id.* at 149, ¶ 10. This Court, in *Ramirez*, determined the superior court improperly dismissed the case. *Id.* at 147, 156, ¶¶ 2, 34. Here, Arizona maintained jurisdiction and Father was heard on his petition providing him due process.

**¶22** Also, the Arizona court took the time to confer with the New York court, especially once it knew that an action was already underway. *See* A.R.S. § 25-1010(A) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter."); A.R.S. § 25-1036(B) (directing the court to "stay its proceeding and communicate with the court of the other state" when "the court determines that a child custody proceeding has been commenced in" another state

having "jurisdiction substantially in accordance with this chapter"). *Ramirez* is not applicable and Father has not shown prejudice.

## IV.    Child Was Not Required to be Returned to Arizona.

**¶23**        Father next argues that once the superior court determined it had jurisdiction, the court erred by not ordering Mother to return Child to Arizona under *Gutierrez*.

**¶24**        While *Gutierrez* did state that removing a child from Arizona without the other parent's permission or court order constitutes custodial interference, 242 Ariz. at 269–70, ¶ 43 (citing A.R.S. § 13-1302(A)(2)), *Gutierrez* did not hold that the superior court must order the child be returned to Arizona, *see id.* at 271–72, ¶¶ 48–49. Rather, *Gutierrez* upheld the lower court's discretionary decision to order the leaving parent to return the child for parenting time in Arizona after considering the best interests and relocation factors. *Id.* at 270–72, ¶¶ 44–49. This does not, as Father suggests, equate to a holding that the leaving parent must return Child to the home state of Arizona. Instead, the court, in *Gutierrez*, considered the advantages and disadvantages to both locations before finding that returning to Arizona for parenting time was in the child's best interests. *Id.* at ¶¶ 47–49.

**¶25**        Here, Father stipulated to the temporary orders and then failed to act on his rights under them. Further, the superior court explained that it found at the time of the temporary orders, it was in Child's best interests "to preserve the status quo" and therefore did not order Mother to return Child to Arizona. This Court finds no abuse of discretion in declining to order Child be returned to Arizona.

## CONCLUSION

**¶26**        This Court affirms the legal decision-making and parenting time orders. Mother is entitled to costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. §§ 12-341, -342(A).



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            TM