680 P.2d 191

**The STATE of Arizona, Appellee,**

v.

**Shirley DONAHUE aka Shirley Jean Watkins, Appellant.**

No. 2 CA–CR 2875.

Court of Appeals of Arizona, Division 2.

Feb. 9, 1984.

Review Denied April 17, 1984.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Frederic J. Dardis, Pima County Public Defender by Constance L. Trecartin, Tucson, for appellant.

OPINION

HOWARD, Judge.

Appellant was indicted on one count of kidnapping or, in the alternative, one count of custodial interference and one count of conspiracy to commit kidnapping or, in the alternative, custodial interference. On motion of the state, counts one and three were dismissed with prejudice. As to count two, the parties stipulated that appellant would waive a jury trial and that the matter would be submitted to the court for determination on the basis of the record before the court in the case of appellant's co-defendant, Donald Bruce Jones. It was further stipulated that in the event the court found appellant guilty and determined to impose a sentence other than probation, appellant would have the right to withdraw her submission to the court and have the case tried to a jury. On the basis of the stipulation and the record in Jones' case, the court found appellant guilty of the charge of custodial interference which was treated as a class one misdemeanor, and placed appellant on two years' probation, on the condition she perform 100 hours of community service work.

The record in the Jones case consisted of police reports; a report prepared by an investigator for the Pima County Attorney's Office; transcripts of interviews with the mother of the victim, a third participant in the offense, and another person; a tran-

script of the grand jury proceedings; and the minute entry conviction of Jones. From that record it appears that appellant was living with Jones and another woman, Rene Miller. Jones was the natural father of Brian Hale, who, at the time of the offense, was almost four years old and living with his natural mother, Edrie Hale. Jones and Hale had never been married, and Jones' name did not appear on the child's birth certificate. There is no evidence, however, as to whether appellant had knowledge of these facts.

On November 5, 1980, appellant, Jones and Miller had gone to Hale's house where Jones requested that the child be allowed to visit him. Hale refused and a violent argument ensued. Sometime later, Jones apparently decided to take the child from Hale and enlisted appellant's and Miller's assistance in doing so. Miller rented a truck which was then packed with all of her belongings as well as those of Jones and appellant. Appellant stole a license plate from another vehicle which she substituted for the license on Jones' pickup truck.

On November 7, 1980, appellant and Miller drove Jones' truck to Hale's house. In the meantime, Jones parked the rental truck down the street and waited for the other two. The two women visited with Hale briefly and when she left the room for a moment, they took the child from the front yard and drove off. They met Jones at the airport, whereupon he took the child and flew to Las Vegas. Appellant and Miller then drove the two trucks to Las Vegas where they met Jones. The group stayed a few days in Las Vegas and then drove to Bakersfield, California, where Miller and Jones eventually set up housekeeping with the child. Appellant apparently left the others in Bakersfield and never rejoined them. Miller left Jones in early 1981 and returned to her home in Texas, where she was ultimately located and arrested in December 1981. Jones and the child were located in Missouri, and the child was returned to his mother. Appellant was arrested in Tucson on February 1, 1982.

In the sole issue raised on appeal, appellant argues that she could not have been guilty of custodial interference in taking the child because she was acting as the agent of the natural father of the victim, who had a right to custody of his son. We do not agree.

The custodial interference statute, A.R.S. § 13–1302, provides:

"A. A person commits custodial interference if, knowing or having reason to know that he has no legal right to do so, such person knowingly takes, entices or keeps from lawful custody any child less than eighteen years of age or incompetent, entrusted by authority of law to the custody of another person or institution."

This statute was added as a part of the revised criminal code in 1978. Its predecessor, former A.R.S. § 13–841, provided in part:

"A person who maliciously, forcibly or fraudulently takes or entices away a child under the age of seventeen years with intent to detain and conceal the child from its parent, guardian or other person having lawful charge of the child, shall be punished by imprisonment . . . ."

Our supreme court stated that the purpose of A.R.S. § 13–841 was "to stem the flood of child-stealing acts often attendant to domestic relations cases." *State v. McLaughlin*, 125 Ariz. 505, 507, 611 P.2d 92, 94 (1980). While the present statute has deleted the requirement of a specific intent to detain and conceal the child from the person having lawful charge of the child, and has added the requirement that the accused know or have reason to know that he has no legal right to take the child, we believe the purpose of the statute remains the same.

In order to obtain a conviction under this statute, the state must prove beyond a reasonable doubt that appellant (1) knowingly took the child, (2) from lawful custody, (3) knowing or having reason to know that she had no legal right to do so. The first element is conceded by appellant and supported by the record. Further, appel-

lant does not contest the fact that, as Brian's natural mother, Edrie Hale was "entrusted by authority of law" with his custody. Her sole argument is that Jones, as the child's natural father and in the absence of any court order terminating his rights or granting sole custody to the mother, was also entitled to custody and that she was simply acting as his agent. The thrust of this argument is that, since Jones could not be guilty of custodial interference, neither could she. Appellant relies on *State v. Edmiston*, 43 Or.App. 13, 602 P.2d 282 (1979), in support of her argument, and cases cited in 20 A.L.R. 4th 823, 831 (1983), holding that consent of a parent having custody is a defense to a charge of child-stealing or kidnapping against a third-party agent.

Appellant's argument misses the mark. Even assuming that Jones had a right to custody of the child, a point which we do not decide, his right was at most a right to co-equal custody with the child's natural mother. He did not have the right to custody of the child to the exclusion of the mother, in the absence of a court order to that effect. The surreptitious actions of appellant and her cohorts in snatching the child and absconding with their possessions first to Nevada and then California support the inference that appellant knowingly deprived the mother of her right to custody and that appellant knew or had reason to know that she had no legal right to do so. The evidence is sufficient to support a conviction for custodial interference.

We have reviewed the record for fundamental error and find none. The judgment and sentence are affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.