8 P.3d 1189

STATE of Arizona, Appellant,

v.

Thomas R. WOOD, Appellee.

No. 1 CA–CR 99–0896.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 31, 2000.

Review Denied Feb. 13, 2001.

Terence C. Hance, Coconino County Attorney By Cathleen Brown Nichols, Deputy County Attorney Attorneys, Flagstaff, for Appellant.

H. Allen Gerhardt, Coconino County Public Defender By H. Allen Gerhardt, Flagstaff, Attorneys for Appellee.

RYAN, Judge.

¶ 1 The State appeals from the trial court's order dismissing with prejudice the indictment charging Thomas R. Wood with one count of custodial interference. *See* Ariz. Rev.Stat. Ann. ("A.R.S") § 13–1302 (Supp. 1999). The trial court found that section 13–1302(A)(2) requires an ongoing court proceeding concerning custody before a person can be charged with custodial interference under this section. We hold that section 13–1302(A)(2) does not require the pendency of a custody proceeding before a person can be charged with custodial interference. Therefore, we reverse.

## BACKGROUND

¶ 2 The pertinent facts in this appeal are not in dispute. In August 1996, Thomas and Kristi Wood were married. In March of the following year, the couple had a son. Several months after their son was born, Kristi told Thomas she wanted a divorce. When efforts to save the marriage failed, Thomas took the

couple's son to Oklahoma in early October 1998. This was done without Kristi's knowledge or consent.

¶ 3 Kristi, unaware of where Thomas had taken her son, contacted the police in Arizona and Oklahoma, where Thomas's parents lived. She also called Thomas's friends and relatives. All her efforts proved fruitless.

¶ 4 On October 9, 1998, Kristi filed for dissolution of the marriage and for temporary custody of her son in Arizona. Kristi then traveled to Oklahoma to search for Thomas and to hire counsel there. While in Oklahoma, Kristi filed for temporary custody of her son. A few days later, an Oklahoma court awarded her temporary custody of her son. On November 19, 1998, Thomas was arrested in Oklahoma. Later that month, an Arizona court granted Kristi sole temporary custody of her son.

¶ 5 In December 1998, a grand jury indicted Thomas on one count of custodial interference under A.R.S. section 13–1302(A)(2). Thomas filed a motion to dismiss the indictment. The trial court granted Thomas's motion and dismissed the indictment with prejudice. The State appealed.

### DISCUSSION

¶ 6 A trial court should dismiss a criminal case upon the defendant's motion only if "the indictment, information, or complaint is insufficient as a matter of law." Ariz. R.Crim. P. 16.6(b). Although we generally review the trial court's granting of a motion to dismiss for an abuse of discretion, this is entirely a matter of statutory interpretation that we review *de novo*. *See State v. Malvern,* 192 Ariz. 154, 155, ¶ 2, 962 P.2d 228, 229 (App.1998).

¶ 7 Our goal in interpreting a statute is to effectuate the intent of the legislature. *See State v. Getz,* 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997). In construing criminal statutes we apply practical, common sense constructions, not hyper-technical ones that would tend to frustrate legislative intent. *See State v. Cornish,* 192 Ariz. 533, 537, ¶ 16, 968 P.2d 606, 610 (App.1998). When "a stat-

ute's language is clear and unambiguous, we must give effect to that language and need not employ other rules of statutory construction." *State v. Riggs,* 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997). When a statute is not clear, we determine the legislature's intent by reading the statute as a whole, and by considering its context, subject matter, historical background, consequences, and effects. *See State v. Garcia,* 189 Ariz. 510, 513, 943 P.2d 870, 873 (App.1997). Statutory provisions are to be "construed in context with related provisions and in light of their place in the statutory scheme." *State v. Wilhite,* 160 Ariz. 228, 230, 772 P.2d 582, 584 (App. 1989).

¶ 8 Our review of the plain language of the statute, its structure, and its legislative history leads us to conclude that the trial court erred in finding that custody proceedings must actually be pending before a defendant could be charged with custodial interference under section 13–1302(A)(2).

¶ 9 Under A.R.S. section 13–1302(A)(2), a person commits custodial interference if, "knowing or having reason to know that the person has no legal right to do so, … [b]efore the entry of a court order determining custodial rights, [he] takes, entices or withholds any child from the other parent denying that parent access to any child." Thomas argues that section 13–1302(A)(2) requires that there be ongoing court proceedings concerning custody before a person can be charged with custodial interference. The State contends that section 13–1302(A)(2) does not require the pendency of a custody proceeding before a person can be guilty of custodial inference. Instead, the State argues that section 13–1302(A)(2) applies to any parent who interferes with the other parent's right of access to and custody of a child by taking or withholding that child from the other parent.

¶ 10 A practical and common-sense reading of the language of section 13–1302(A)(2) compels us to hold that pending custody proceedings are not a prerequisite to a prosecution for custodial interference under this section.[1]

---

1. The State cites several cases from other jurisdictions that hold that prior custody orders are

not required for there to be custodial interference. *See Strother v. State,* 891 P.2d 214, 218

The statute states that it applies in situations "[b]efore the entry of a court order." By its own terms, it covers any act of custodial interference that takes place before the entry of a court order regardless of whether there is a pending court action. Despite Thomas's argument to the contrary, there is simply no language or reference in the statute that limits its application only to situations in which there is a pending court action. To read section 13–1302(A)(2) as applying only during the very limited period of time when custody proceedings are in progress is hyper-technical. If the legislature had intended this provision to apply in such a limited situation, we believe that it would have explicitly stated its intent in the statute.

¶ 11 Our conclusion is supported by the structure of the custodial interference statute as a whole. When reading a statute as a whole, we attempt to give meaningful operation to all of its provisions. *See Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). When the three relevant subsections [2] of section 13–1302(A) are considered together, it is apparent that the legislature intended to prohibit one parent from denying the other parent lawful contact with his or her children under all circumstances. Section 13–1302(A)(1) forbids keeping a child from the parent or institution that has lawful custody of a child. Section 13–1302(A)(3) prohibits those who already have joint legal custody of their children from withholding physical custody from the other parent. Finally, section 13–1302(A)(2) prohibits a parent from denying another parent lawful access to a child in situations when neither of the other two provisions applies.[3] When considering these provisions together, we find nothing that implies that section 13–1302(A)(2) can be triggered only by the filing of a custody action. Rather, it applies when one parent, having no legal right to do so, denies the other access to the child.

¶ 12 Our interpretation is also consistent with A.R.S. section 13–1302(C)(1), which provides a defense to the charge of custodial interference charged under section 13–1302(A)(2), if, among other things, a defendant files a petition for custody of the child "within a reasonable period of time" after taking the child. *See* A.R.S. § 13–1302(C)(1). This provision obviously contemplates furnishing a defense to those parents who initiate custody proceedings after they have taken their children from the other parent. By necessary implication, the events giving rise to the charge of custodial interference must have already taken place before the custody proceedings began or the defense provided by section 13–1302(C)(1) would be meaningless. *See Wyatt,* 167 Ariz. at 284, 806 P.2d at 873. Accordingly, the legislature must have intended for it to be a crime to interfere with the custody of a child even when there are no ongoing custody proceedings. Otherwise, it would not have provided a limited defense to those parents who initiate a custody proceeding within a reasonable time after taking the child.

¶ 13 Finally, the legislative history of the present version of the custodial interference statute supports our interpretation of section 13–1302(A)(2). The staff of the Arizona Senate explained that the purpose of the bill amending the former version of A.R.S. section 13–1302 was to increase "the scope of actions which come under custodial interference and the penalties which result from such offenses." Arizona State Senate, Final Revised Fact Sheet for H.B. 2248, 43rd Legislature–First Regular Session (1997). Addi-

(Alaska App.1995); *State v. Vakilzaden,* 251 Conn. 656, 742 A.2d 767, 771–72 (1999); *State v. Butt,* 656 A.2d 1225, 1227 (Me.1995); *State v. Fitouri,* 133 Or.App. 672, 893 P.2d 556, 558 (1995). We do not find these cases persuasive because none of the jurisdictions cited by the State has provisions in their custodial interference statutes similar to the language in section 13–1302(A)(2).

2.  A fourth subsection, set forth in A.R.S. section 13–1302(A)(4), has no relevance to this situation or our analysis as it criminalizes the failure or refusal to return a child to his other lawful custodian after the expiration of access rights outside the state.

3.  Absent a court order, both parents generally have co-equal, but not exclusive, custody of their children. *See State v. Donahue,* 140 Ariz. 55, 57, 680 P.2d 191, 193 (App.1984); *In the Matter of the Appeal in Maricopa County Juvenile Action No. JD–4974,* 163 Ariz. 60, 62, 785 P.2d 1248, 1250 (App.1990).

tionally, the relevant minutes from the committees that reviewed the bill suggest that the purpose of the provision was to codify existing case law giving both parents equal access to their child and forbidding either parent from hiding a child from the other. *See* Minutes of Senate Committee on Family Services, 43rd Legislature–First Regular Session (Ariz. Mar. 19, 1997); Minutes of House Committee on Family Services, 43rd Legislature–First Regular Session (Ariz. Jan. 30, 1997); Minutes of House Committee on Judiciary, 43rd Legislature–First Regular Session (Ariz. Feb. 12, 1997). If the legislature's purpose was to increase the scope of Arizona's custodial interference statute, it is unlikely that it would have criminalized only conduct that occurs after court proceedings have begun but ignored conduct that occurs before such proceedings.

## CONCLUSION

 ¶ 14 The trial court's order dismissing the indictment is reversed.[4]

SHELDON H. WEISBERG, Judge, and ANN A. SCOTT TIMMER, Judge, concur.

---

**4.** Thomas also argued that the custodial interference statute is unconstitutionally vague. However, "[e]ven if an ordinance or statute may be vague in some particulars, a person 'to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" *State v. Trachtman*, 190 Ariz. 331, 334, 947 P.2d 905, 908 (App.1997) (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)). Here, Thomas allegedly took a young child out of the state and hid him from his mother for almost two months. As alleged, Thomas's conduct clearly violated section 13–1302(A)(2) and thus, he has no standing to argue that the statute is unconstitutionally vague. *See State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988).