IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHELE GUTIERREZ, *Petitioner*,

*v.*

THE HONORABLE DEWAIN D. FOX, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

ROBERT KIVLIGHN, II, *Real Party in Interest.*

No. 1 CA-SA 17-0047
FILED 4-13-2017

Petition for Special Action from the Superior Court in Maricopa County
No.  FC2016-009529
The Honorable Dewain D. Fox, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Horne Slaton, PLLC, Scottsdale
By Sandra Slaton, Kristin M. Roebuck
*Counsel for Petitioner*

Cantor Law Group, PLLC, Phoenix
By Bryan Blehm

The Murray Law Offices, Scottsdale
By Stanley D. Murray
*Co-Counsel for Real Party in Interest*

---

## OPINION

Judge Paul J. McMurdie delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Patricia K. Norris joined.

---

**M c M U R D I E**, Judge:

¶1          Michele Gutierrez ("Mother") seeks special action relief, challenging the superior court's temporary orders awarding joint legal decision-making authority to both parents, and parenting time with Robert Kivlighn II ("Father") to occur in Arizona. Mother argues the temporary orders are invalid because (1) Arizona is not the minor child's home state, (2) the superior court did not make statutory findings pursuant to Arizona Revised Statutes ("A.R.S.") section 25-403, and (3) as Father had not established paternity by the time she moved, she did not have to obtain Father's consent to move with the child to Wisconsin.[1]

¶2          We previously issued an order accepting jurisdiction, denying relief, and stating a written decision would follow. This is that decision. We hold that (1) under A.R.S. § 25-1002(7)(b) when a child of six months of age or younger has lived in Arizona "from birth with a parent," and the proceeding is commenced by a parent still living in Arizona within six months of the child leaving Arizona, Arizona remains the home state of the child; (2) statutory findings under A.R.S. § 25-403 are not mandatory when determining temporary orders under A.R.S § 25-404; and (3) a voluntary acknowledgement of paternity has the same effect as a judgment, thereby requiring Mother to obtain Father's consent or a court order to permanently move the child out of Arizona.

### FACTS AND PROCEDURAL BACKGROUND

¶3          M.K. was born outside of marriage in Arizona on July 21, 2016. M.K.'s birth was registered with the Arizona Department of Health Services ("Department") on July 31, 2016, and the Department issued a "certificate of live birth" on December 5, 2016. The certificate lists Kivlighn as the father. Although Mother and Father have never married, they and

---

[1]      We cite to the current version of applicable statutes and rules when no revision material to this case has occurred.

M.K. lived in Arizona together until September 29, 2016, when Mother left Arizona with M.K. after a disagreement with Father. Mother arrived in Wisconsin on October 2, 2016.

¶4            Father initially believed Mother and M.K. had left Arizona to visit Mother's family in Wisconsin and would return to Arizona. However, Father received a text message from Mother on November 23, 2016, informing him that she had decided to permanently relocate to Wisconsin with M.K.[2] Father traveled to Wisconsin to try to convince Mother to return to Arizona, but was unsuccessful.

¶5            Immediately after he returned from Wisconsin, on November 28, 2016, Father petitioned to establish his paternity, legal decision-making, parenting time and child support ("the petition"), and moved for temporary orders. M.K. was four months and nine days old when Father filed the petition.

¶6            On December 2, 2016, Mother filed a petition to establish paternity, legal decision-making (custody) and parenting time in Wisconsin, and verified under oath that Father was M.K.'s biological father. The Arizona and Wisconsin courts conferred and agreed the Arizona court would decide which state had jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). After the parties briefed the jurisdictional issue in December 2016, the superior court issued an order in which it determined Arizona had "exclusive home state jurisdiction to make the initial child custody order," and that Arizona was "not an inconvenient forum" pursuant to A.R.S. § 25-1037(B) ("the jurisdictional order").

¶7            On February 10, 2017, the superior court conducted an evidentiary hearing on Father's motion for temporary orders regarding legal decision-making, parenting time, and child support. Father testified he cared for M.K., held and nurtured him as much as he could, utilizing the parenting skills he had learned as the oldest of seven siblings. Father sought to establish an equal parenting plan, as he wanted to actively participate in

---

[2]      Mother testified that Father knew she was moving to Wisconsin permanently when she left in September because she "packed [her] car with everything [she] needed" and told him she missed her family and needed their support.

M.K.'s up-bringing, feed him from a bottle, change his diapers, and teach him as he had with his six younger siblings.

¶8            During the hearing, Father denied Mother's allegation that he had a substance abuse problem, although he admitted that he previously legally used alcohol and marijuana with Mother in Colorado. Father provided the court with drug test results, showing negative results for alcohol and a variety of drugs and other substances. Father further denied he had any criminal history, and stated that he had never been cited for driving under the influence. Father testified he had not experienced any employment problems or been terminated from a job because of drug use. Father denied suffering from suicidal tendencies or mental health problems. Father also denied all of Mother's allegations of physical abuse, although he admitted to having "called her names" and being aggressive and angry at times. Father's sister testified and opined Mother restricted Father's access to M.K. before she left for Wisconsin.

¶9            Mother testified Father had a substance abuse problem because he drank daily and smoked marijuana. Mother asserted Father was rarely involved in caring for M.K. Mother further testified she has extensive family support in Wisconsin, where she grew up, and asserted that neither Father nor his family had helped with M.K. in any significant way. She denied having restricted Father's access to M.K., noting she had provided Father with photos, told Father he could "FaceTime" with M.K., and "never told him he could not see his child." Mother admitted, however, she would not allow Father to be with M.K. for an extended amount of time, and confirmed she did not consider Father a primary caregiver.

¶10          At the conclusion of the temporary orders hearing on February 10, 2017, the superior court entered an interim order requiring Father to submit to a hair follicle test.[3] The court declined to require supervised parenting time. The court granted Father daily parenting time of two three-hour increments until February 15, at which point Mother could return to Wisconsin with M.K.

---

[3]      The test results filed with the superior court on February 15, 2017, were negative for any illegal substances. While the parties did not submit the results to this court for review, we have taken judicial notice of them. *State v. McGuire*, 124 Ariz. 64, 66 (App. 1978) ("An appellate court can take judicial notice of any matter of which the trial court may take judicial notice, even if the trial court was never asked to do so.").

¶11 On February 15, 2017, the superior court filed temporary orders, which included a section titled "Best Interest Findings: A.R.S. § 25-403." In its order, the court found Father's paternity "sufficiently established," awarded Father parenting time to take place in Arizona, and awarded Father and Mother joint legal decision-making authority. Mother then filed this special action seeking review of the superior court's temporary orders.

## SPECIAL ACTION JURISDICTION

¶12 Special action jurisdiction is discretionary, but appropriate when no "equally plain, speedy, and adequate remedy by appeal" exists. Ariz. R.P. Spec. Act. 1(a). Because temporary orders under A.R.S. § 25-404 are "merely preparatory to a later proceeding" that might affect the judgment or its enforcement, they are not appealable; leaving a party with no adequate remedy by appeal. *Villares v. Pineda*, 217 Ariz. 623, 624–25, ¶ 10–11 (App. 2008); *see* Ariz. R.P. Spec. Act. 1(a). *But cf.* A.R.S. § 25-1064 (an appeal may be taken from a final order in a proceeding enforcing the UCCJEA). We therefore have discretion to accept special action jurisdiction over temporary orders. *Villares*, 217 Ariz. at 625, ¶ 11; *see DePasquale v. Super. Ct. In and For County of Maricopa*, 181 Ariz. 333, 336–37 (App. 1995) (the proper challenge to a temporary order is by special action).

¶13 We also have discretion to accept special action jurisdiction "when statutes or procedural rules require immediate interpretation," and a petition "presents a purely legal issue of first impression that is of statewide importance." *Escalanti v. Super. Ct. In and For County of Maricopa*, 165 Ariz. 385, 386 (App. 1990); *State ex rel. Thomas v. Duncan*, 216 Ariz. 260, 262, ¶ 5 (App. 2007); *see* Ariz. R.P. Spec. Act. 8(a).

¶14 The petition for special action in this case raises an issue of first impression regarding the application of jurisdiction of A.R.S. § 25-1031(A)(1) for a child under six months of age as defined in A.R.S. § 25-1002(7)(b). Also, there is no controlling authority whether the superior court must make statutory findings of fact pursuant to A.R.S. § 25-403 from a § 25-404 temporary order hearing in which parenting time and decision-making authority are contested. Finally, whether establishment of paternity by a voluntary acknowledgement pursuant to A.R.S. § 25-812(D) has the same effect as a judgment, is an issue which requires our immediate interpretation.

¶15          Thus, in the exercise of our discretion, we accept special action jurisdiction pursuant to A.R.S. § 12-120.21(A)(4) and Arizona Rule of Procedure for Special Action 1(a).

## DISCUSSION

### A.          Arizona has "Home State" Jurisdiction of the Child.

¶16          Mother contends the superior court's temporary orders are invalid because Arizona is not M.K.'s "home state" pursuant to the UCCJEA, and therefore the superior court did not have jurisdiction to enter them. Mother argues a minor child less than six months old, who has not lived *exclusively* in one state, has *no* "home state" pursuant to UCCJEA. Consequently, Mother argues the superior court erred by finding M.K. had a more substantial connection to Arizona than to Wisconsin.

¶17          Arizona and Wisconsin have adopted nearly identical versions of the UCCJEA. *See* A.R.S. §§ 25–1001 to –1067; Wis. Stat. § 822.01– .47. We review *de novo* whether a court has subject matter jurisdiction under the UCCJEA. *Mangan v. Mangan*, 227 Ariz. 346, 350, ¶ 16 (App. 2011); *see Willie G. v. ADES.*, 211 Ariz. 231, 233, ¶ 8 (App. 2005) (this Court reviews *de novo* matters of statutory interpretation and mixed questions of fact and law).

¶18          Under the UCCJEA, a state with home state jurisdiction has a jurisdictional priority. *See* A.R.S. § 25-1031(A)(1−4) (paragraphs 2, 3, or 4 apply only if a court of another state does not have jurisdiction under paragraph 1, which defines parameters of home state jurisdiction, or if a home state court abdicates its jurisdiction to a more appropriate state). "[W]hen there is a statutory conflict in the application of home state jurisdiction, the conflict should be resolved to strengthen (rather than dilute) the certainty of home state jurisdiction." *Welch–Doden v. Roberts*, 202 Ariz. 201, 208, ¶ 32 (App. 2002). The UCCJEA revised the original Uniform Child Custody Jurisdiction Act, which was adopted in Arizona in 1978 to establish "uniformity and the need to avoid disputes between competing jurisdictions," but produced inconsistencies in interpretation among state courts. *Id.* at ¶¶ 24, 29. The UCCJEA prioritized home state jurisdiction over other bases for jurisdiction and "completely eliminate[d] a determination of 'best interests' of a child from the jurisdictional inquiry." *Id.* at ¶¶ 30−31. *But cf. In re Ramirez v. Barnet*, 241 Ariz. 145, 147–48, 152, ¶¶ 13, 27 (App. 2016) (if a child has no home state, the alternative ground for jurisdiction will apply, and the Parental Kidnapping Prevention Act, unlike the

UCCJEA, will require the best interests of the child be determined to give full faith and credit to custody orders between states).

**¶19**        In Arizona, the superior court has jurisdiction to make an initial child custody determination if "[Arizona] . . . was the *home state* of the child *within six months* before the commencement of the proceeding and the child is absent from [Arizona] but a parent or person acting as a parent continues to live in [Arizona]." A.R.S. § 25-1031(A)(1) (emphasis added). For a child under the age of six months, "home state" is "the state in which the child *lived from birth* with a parent or person acting as a parent, including any period during which that person is temporarily absent from that state." A.R.S. § 25-1002(7)(b) (emphasis added). After an initial legal decision-making and parenting time determination has been made, continuing jurisdiction is governed by "a separate (but intertwined) statutory scheme" under A.R.S. § 25-1032(A). *Welch-Doden*, 202 Ariz. at 204, ¶ 14.

**¶20**        The court in *Welch-Doden* reconciled a conflict between § 25-1031(A)(1) and the definition of "home state" under § 25-1002(7)(a) (limits home state jurisdiction only to states where a child lived for at least six consecutive months immediately before the proceeding was initiated) by extending the six-consecutive-months long requirement of § 25-1002(7)(a) to any time "within six months before the commencement of the [child custody] proceeding." *Welch-Doden*, 202 Ariz. at 208−09, ¶ 33 (quoting A.R.S. § 25-1031(A)(1)). The court reasoned that "[g]iven the fundamental purpose of the UCCJEA to establish the certainty of home state jurisdiction, it is clear to us that § 25-1031(A)(1) acts to *enlarge and modify* the definition of home state under § 25-1002(7)(a)." *Id.* (emphasis added). The drafters intended for home state jurisdiction to have priority and this extended home state jurisdiction promotes that intent. *Id.*

**¶21**        No Arizona precedent has applied the home state jurisdiction of § 25-1031(A)(1) to the definition of home state of a child six months or younger under § 25-1002(7)(b). Although this court reconciled the extended home state jurisdiction with § 25-1002(7)(a), "there is no indication the legislature intended 'the home state . . . within six months,' to apply only to children six months of age or older." *In re Burk*, 252 S.W.3d 736, 741 (Tex. App. 2008). Like the Texas Court of Appeals, we have found nothing in the UCCJEA or Arizona legislative history indicating any contrary legislative

intent and find the interpretation from Texas persuasive.[4] This interpretation is consistent with other UCCJEA jurisdictions. *See, e.g.*, *Meyeres v. Meyeres*, 196 P.3d 604, 607 (Utah Ct. App. 2008) (determining Utah was home state of a child who was born in Utah but moved to Kansas at six weeks of age); *Baker v. Tunney*, 201 So. 3d 1235, 1236–39 (Fla. Dist. Ct. App. 2016) (Florida was the home state, pursuant to "the plain language of the statute," because a child born in Florida lived in Florida with both parents "until the mother relocated to New York when the child was less than two weeks old"); *Fleckles v. Diamond*, 35 N.E.3d 176, 188, ¶ 52 (Ill. Ct. App. 2015) (Colorado, not Illinois, was the child's home state upon birth, because the UCCJEA's "home state" is the birth state for a child less than six months old); *Gray v. Gray,* 139 So.3d 802, 806 (Ala. Civ. App. 2013) (Alabama had jurisdiction regarding the divorce but not custody issues as Michigan, not Alabama, was child's "home state" because child was born in Michigan and had never lived in Alabama.).

**¶22**        Here, the facts closely resemble the facts in the Texas case and the other cited cases. M.K. was born in Arizona. M.K. lived in Arizona after his birth for approximately two months. Then, Mother moved M.K. to Wisconsin, where she and M.K. lived for approximately two months before Father filed the petition in Arizona. Father lived in Arizona when M.K. was born and has continued to live in Arizona.

**¶23**        Section 25-1031(A)(1) provides that Arizona has jurisdiction to make an initial child custody determination if it was the home state within six months before commencement of the proceeding, and the child is absent from Arizona but a parent continues to live in Arizona. Father filed the Arizona proceeding on November 28, 2016. M.K. had lived in Arizona from birth to September 29, 2016, when Mother moved with him to Wisconsin. September 29, 2016, falls within the six months preceding the filing on November 28, 2016. Accordingly, Arizona was the home state

---

4        Texas has adopted the UCCJEA. *See Waltenburg v. Waltenburg*, 270 S.W.3d 308, 315 (Tex. App. 2008). The Texas definition of "home state" reads: "In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or a person acting as a parent. A period of temporary absence of a parent or a person acting as a parent is part of the period." Tex. Fam. Code Ann. § 152.102 (West 2015); *accord* A.R.S. § 25-1002(7)(b) (for a child less than six months old, "home state" is "the state in which the child lived from birth with a parent or person acting as a parent, including any period during which that person is temporarily absent from that state.").

within six months before the Arizona proceeding commenced, and Arizona has jurisdiction under A.R.S. § 25-1031(A)(1). Mother's argument that M.K. did not live solely in the state of birth, and thus has no home state, fails.

¶24 Mother further argues the superior court erred by finding M.K. had a more substantial connection to Arizona than to Wisconsin; she contends the court should have declined to exercise jurisdiction as an inconvenient forum pursuant to A.R.S. § 25-1037(A) and (B).

¶25 Under the UCCJEA, once the superior court determines it has jurisdiction, it may nevertheless decline to exercise its jurisdiction at any time if it determines that "it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." A.R.S. § 25-1037(A). Here, the superior court provided detailed analysis of why Arizona is not an inconvenient forum, analyzing all the § 25-1037(B)(1–8) factors. Upon review of the record *de novo*, we find substantial evidence supporting the superior court's analysis and conclusion. *Welch–Doden,* 202 Ariz. at 210–11, ¶¶ 43–44.

¶26 The superior court did not err by finding Arizona is M.K.'s home state and that it has exclusive jurisdiction in compliance with §§ 25-1031(A)(1), (B), and -1037(B).

### B. Statutory Findings Under A.R.S. § 25-403 Are Not Mandatory When Determining Temporary Orders Under A.R.S. § 25-404.

¶27 Mother argues the superior court's temporary orders are invalid because the court failed to make specific findings pursuant to A.R.S. § 25-403(B).[5] Mother contends the plain language of subsection (B) extends the specific findings requirement to all contested custody orders, given the best interests of the child is the primary consideration in awarding legal decision-making and parenting time. *See Hays v. Gama,* 205 Ariz. 99, 102, ¶ 18 (2003); A.R.S. § 25-403(A).

¶28 We review the superior court's interpretation of statutes and procedural rules *de novo. Mara M. v. ADES,* 201 Ariz. 503, 505, ¶ 15 (App.

---

[5] Both Mother and Father analyzed the factors of § 25-403(A) in their pretrial statements filed prior to the temporary orders hearing. Although the superior court made detailed findings of fact regarding many of the factors identified in § 25-403, *see infra* ¶ 47, it declined "to make the type of detailed findings that would accompany final orders."

2002). We start by giving effect to the intent of the legislature. *See Pima County v. Pima County Law Enf't Merit Sys. Council,* 211 Ariz. 224, 227, ¶ 13 (2005). "[W]e interpret court rules according to the principles of statutory construction." *Potter v. Vanderpool,* 225 Ariz. 495, 498, ¶ 8 (App. 2010). If the language of a statute or rule is unambiguous, "we apply it as written." *Roberto F. v. DCS*, 237 Ariz. 440, 441, ¶ 6 (2015). Only if the language is unclear do "we apply secondary principles of construction, such as examining the rule's context, its relationship to related rules, its background, and the consequences of differing interpretations." *Id.* "We seek to harmonize and attain consistency among related statutory provisions in the context of the overall statutory scheme." *Andrew R. v. ADES*, 223 Ariz. 453, 458, ¶ 16 (App. 2010).

**¶29**　　　The Arizona Constitution vests our supreme court with the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. 6, § 5(5); *Seisinger v. Siebel*, 220 Ariz. 85, 88, ¶ 7 (2009). The Rules of Family Law Procedure "govern the procedure in the Superior Court of Arizona in all family law cases, including paternity, and all other matters arising out of Title 25, Arizona Revised Statutes (A.R.S.)." Ariz. R. Fam. Law P. 1.

**¶30**　　　Rule 82 of the Arizona Rule of Family Law Procedure reads that "[f]indings of fact and conclusions of law are *unnecessary* on decisions of motions under Rules 32 and 79 *or any other motion*, except as provided in paragraph C." Ariz. R. Fam. Law P. 82(A) (emphasis added). The "paragraph C" exception does not apply here; therefore, the rule's directive that findings of fact and conclusions of law are not necessary for motions applies to motions for temporary orders under Rule 47.

**¶31**　　　Section 25-404(A) also addresses temporary orders. Under that statute, once a party has filed a motion for a temporary order supported by "pleadings as provided in § 25-411," "[t]he court may award temporary legal decision-making and parenting time under the standards of § 25-403 after a hearing, or, if there is no objection, solely on the basis of the pleadings." Section 25-404 does not, however, direct the superior court to make detailed § 25-403 findings.

**¶32**　　　Mother argues statutory findings are required because temporary orders resolve contested issues, and § 25-403(B), therefore, extends the requirement to make specific findings. Mother also argues the court's "original" determinations pursuant to § 25-403(A) include temporary orders. The arguments place §§ 25-403 and -404 in conflict. However, "where two statutes deal with the same subject, the more specific

statute controls." *Pima County v. Heinfeld*, 134 Ariz. 133, 134–35 (1982). Here, both §§ -403 and -404 concern determinations of legal decision-making and parenting time. The language "either originally or on petition for modification" in § 25-403(A) includes a spectrum of circumstances presented by various types of petitions and is a general statute. By contrast, § 25-404 only applies to temporary orders, and is triggered only after a party to an "originally" filed petition files a *motion* for a temporary order. Section 25-404 is the more specific statute, applicable only under certain conditions, and its discretionary provision controls the content of temporary orders over the mandatory requirement of § 25-403 to "make specific findings on the record about all relevant factors." A.R.S. § 25-403(B).

¶33 Additionally, "[w]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." *State v. Gonzales*, 206 Ariz. 469, 471, ¶ 11 (App. 2003). Here, the term "shall" is not included in § 25-404(A), although it is included in sections 25-403(A) and (B). We will not read "shall" into § 25-404, when its drafters omitted it.

¶34 Moreover, the requirement in § 25–403(B) that the superior court make specific findings on the record about all relevant factors and the court's reasoning "exists not only to aid an appellant and the reviewing court, but also for a more compelling reason—that of aiding all parties and the family court in determining the best interests of the child or children both currently and in the future." *Reid*, 222 Ariz. at 209, ¶ 18. Given the transitory nature of temporary orders, requiring detailed findings regarding all aspects of a pending case is not warranted. The temporary order is not appealable, so it only marginally, at best, helps a "reviewing court," and a temporary order "[d]oes not prejudice the rights of the parties or of any child that are to be adjudicated at the subsequent hearings in the proceeding," A.R.S. § 25-315(F)(1), and "[t]erminates when the final decree is entered . . . ." A.R.S. § 25-315(F)(4); *see* Ariz. R. Fam. P. Rule 47(M) ("Temporary orders become ineffective and unenforceable upon termination of an action either by dismissal or following entry of a final decree . . . ."). Given the extraordinary number of motions for temporary orders handled by the superior courts, and the minimal utility of detailed findings in such orders, we decline to mandate that § 25-403 findings be made in every temporary order.

¶35 For these reasons, we hold that superior courts are not required to make findings addressing the A.R.S. § 25-403 factors when

entering temporary orders regarding legal decision-making and parenting time pursuant to A.R.S. § 25-404. *See* Ariz. R. Fam. P. 82 (findings are "unnecessary" in resolving motions). Although A.R.S. § 25-404 authorizes a superior court to award legal decision-making and parenting time under the standards of § 25-403, it does not require the court to make findings on those factors. Thus, the superior court did not commit reversible error by not making all the findings under § 25-403.

### C. Paternity is Voluntarily Established by a Registered Acknowledgement of Paternity Under A.R.S. § 25-812.

¶36 Mother argues paternity was not established by the time she left for Wisconsin, and therefore she was not required to obtain Father's "consent" to remove M.K. from Arizona pursuant to A.R.S. § 13-1302(B). Mother contends M.K.'s birth certificate was not signed by Father and Father did not file a petition to establish paternity until Mother already resided in Wisconsin with M.K. Therefore, Mother argues the court erred by considering Father's lack of consent to Mother's relocation when rejecting a long-distance parenting plan. We disagree with both the premise and conclusion of Mother's argument.

¶37 Parents of a child born out of wedlock may voluntarily establish paternity by filing a notarized or witnessed statement with the Department of Economic Security or the Department that contains the Social Security numbers of both parents, and is "signed by both parents acknowledging paternity or two separate substantially similar notarized or witnessed statements acknowledging paternity." A.R.S. § 25-812(A)(1). "Once signed, a purported voluntary acknowledgement of paternity is presumed valid and binding until proven otherwise." *Andrew R. v. ADES*, 223 Ariz. 453, 457, ¶ 17 (App. 2010) (citing *Stephenson v. Nastro,* 192 Ariz. 475, 483, ¶ 26 (App. 1998).

¶38 "[T]he father's name *shall be stated* on a birth certificate . . . [i]f a mother and father who are not married to each other at the time of birth and were not married to each other in the ten months before the birth *voluntarily acknowledge* paternity pursuant to § 25-812 . . . ." A.R.S. § 36-334(C)(2) (emphasis added); *see* A.R.S. § 36-333(B)(1−3) (to register a birth certificate from a birth that occurred in a hospital, a chief administrative officer of the hospital obtains information, fills out the birth certificate, and "submit[s] the birth certificate for registration to . . . the state registrar."). "A voluntary acknowledgment of paternity . . . is a

determination of paternity and has the *same force and effect as a superior court judgment.*"[6] A.R.S. § 25-812(D) (emphasis added).

¶39 Here, Mother and Father were never married to each other. But because Father's name appears on the birth certificate registered with and issued by the Department, Father's paternity was established with the "force and effect" of a superior court judgment. *See* A.R.S. §§ 25-812(A)(1), -812(D), -818(A), 36-334(C)(2). Mother could have challenged Father's acknowledgement of paternity and rescinded it within "[s]ixty days after the last signature [wa]s affixed to the notarized acknowledgment of paternity that is filed with the department of economic security, [or] the department of health services" by filing a written copy of the rescission with the Department. A.R.S. § 25-812(H)(1), (I). The record, however, does not indicate Mother has *ever* attempted to rescind or challenge the issued birth certificate, timely or otherwise.

¶40 Mother further argues that because the actual birth certificate was not signed by Father, his paternity was not established pursuant to A.R.S. § 25-814(A)(3) ("A man is presumed to be the father of the child if . . . [a] birth certificate is signed by the mother and father of a child born out of wedlock."). However, § 25-814 specifies mere *presumptions* of paternity to be used if paternity is contested, and is thus subordinate to § 25-812, which governs the voluntary *establishment* of paternity for "a parent of a child born out of wedlock." Moreover, in 2003 the legislature amended A.R.S. § 25-812, and specifically deleted the requirement that a father sign a birth certificate to voluntarily establish paternity. 2003 Ariz. Sess. Laws, ch. 230, § 3. Under § 25-812(A), only the voluntary acknowledgment of

---

[6] Under A.R.S. § 36-334(C)(2), Father's name could only be registered on the birth certificate if Mother and Father signed a voluntary acknowledgment of paternity. Mother did not address Father's voluntary acknowledgement of paternity when she argued that Father's fundamental right to parent M.K. did not vest before she left for Wisconsin because Father was not married to her and did not act to establish paternity before her departure. *See Pima County Juv. Severance Action No. S-114487*, 179 Ariz. 86, 96 (1994). Mother relies on an out of state case, in which a Massachusetts trial court was found to have lacked authority to force an unmarried mother and minor child to return from New York because mother was the child's only legal parent at the time they moved from Massachusetts to New York. *See Smith v. McDonald*, 941 N.E.2d 1, 9 (Mass. 2010). We do not find *Smith* persuasive. Father was M.K.'s legal parent at the time Mother moved from Arizona to Wisconsin.

paternity or an agreed upon genetic test may be used to voluntarily establish paternity for a child born out of wedlock.

### D. Mother Needed Father's Consent or a Court Order to Move M.K. to Wisconsin.

¶41 Mother argues that as a parent without a specific court order designating parental decision-making, she was not obligated to obtain Father's consent before moving with M.K. to Wisconsin. We disagree.

¶42 "A father has a right to co-equal custody of his child but not exclusive custody absent a court order to that effect." *Maricopa County Juv. Action No. JD-4974*, 163 Ariz. 60, 62 (App. 1990). Our legislature has declared, as Arizona public policy, that it is in the best interests of a child, absent evidence to the contrary, "[t]o have substantial, frequent, meaningful and continuing parenting time with both parents" and "[t]o have both parents participate in decision-making about the child." A.R.S. § 25-103(B)(1), (2). This policy is also reflected in A.R.S. § 25-808(A), when upon the filing of a petition for legal decision-making and parenting time with an attached birth certificate or an acknowledgment of paternity, the court issues a preliminary injunction which, among other orders, prohibits "removing any natural or adopted child of the parties . . . from the jurisdiction of the court without the prior written consent of the [other] part[y] or the permission of the court." A.R.S. § 25-808(B)(1)(b).

¶43 Likewise, a parent commits "custodial interference" if he or she knowingly "[b]efore the entry of a court order determining custodial rights, takes, entices or withholds any child from the other parent denying that parent access to any child." A.R.S. § 13-1302(A)(2); *State v. Donahue*, 140 Ariz. 55, 57 (App. 1984) (father did not have the right to custody of the child to the exclusion of mother in the absence of a court order to that effect). Our supreme court stated the purpose of the custodial interference statute was "to stem the flood of child-stealing acts often attendant to domestic relations cases." *State v. McLaughlin*, 125 Ariz. 505, 507 (1980); *Donahue*, 140 Ariz. at 57. A parent's removal of a child from Arizona to another state, without consent of the other parent or a court order, constitutes withholding the child from the other parent. *State v. Wood*, 198 Ariz. 275, 277–79, ¶¶ 10–13 (App. 2000) (holding that § 13-1302(A)(2) applies to any parent who interferes with the other parent's right of access to and custody

of a child by taking or withholding that child from the other parent).[7] Given the public policy of this state, we disagree with Mother that she could permanently remove the child from Arizona without either obtaining permission from Father or a court order.

¶44 Mother further argues this was not a relocation case and the superior court erred by considering relocation factors under A.R.S. § 25-408. We agree that this is not a relocation case under A.R.S. § 25-408. *Buencamino v. Noftsinger*, 223 Ariz. 162, 163, ¶ 8 (App. 2009) (two prerequisites need to be met before applying § 25-408: (1) a written agreement or court order providing for custody or parenting time by both parents, and (2) both parents residing in Arizona). Although this is not a relocation case under § 25-408, the superior court may consider § 25-408 factors in resolving a long-distance parenting issue. *Buencamino*, 223 Ariz. at 163, n. 3 ("Even when the § 25-408 relocation provisions are not required to be considered, family court judges may, of course, choose in their discretion to consider some or all of the factors listed in § 25–408(I) in appropriate cases.")

¶45 Father was M.K.'s "legal parent"[8] from the date he signed the acknowledgement of paternity. *See* A.R.S. §§ 25-812(A)(1), (D), -818(A). Thus, Mother was required to secure Father's agreement or a court order to permanently remove M.K. to Wisconsin. *State v. Wood*, 198 Ariz. at 279, ¶ 13 (the purpose of § 13-1302(A)(2) is to give "both parents equal access to their child and forbidding either parent from hiding a child from the other"); *Donahue*, 140 Ariz. at 57. When rendering its temporary order, the superior court did not abuse its discretion by considering Mother's failure to secure consent from Father before moving M.K. from Arizona. *See* A.R.S. § 25-403(A)(6) (which parent is more likely to allow the child frequent, meaningful, and continuing contact with the other parent).

---

[7] Mother's reliance on the presumption of maternal custody for children born out of wedlock in A.R.S. § 13–1302(B) is misplaced because "the present case does not involve criminal prosecution, [therefore, the statute] does not apply." *Juv. Action No. JD-4974*, 163 Ariz. at 63.

[8] "'Legal parent' means a biological or adoptive parent whose parental rights have not been terminated. Legal parent does not include a person whose paternity has not been established pursuant to § 25-812 or 25-814." A.R.S. § 25-401.

E.     **The Superior Court Did Not Err by Issuing Temporary Orders That May Require Mother to Return to Arizona With M.K.**

**¶46**     Mother argues that because Father did not file a petition to establish legal decision-making until she already resided in Wisconsin with M.K.**,** the superior court did not have the authority to enter an order effectively forcing her and the child to move back to Arizona so that Father could exercise his parenting time in Arizona. Because we conclude Father was M.K.'s legal parent as of the day he signed the voluntary acknowledgement of paternity, Mother's argument fails, as the superior court was merely following the statutory scheme described *supra*, and acted within its authority.

**¶47**     The superior court explained its reasoning for issuing the temporary orders as follows:

> Section 25-403(A) enumerates specific factors for the Court to consider, among all factors that are relevant to the children's physical and emotional well-being. The best interest of a child is the primary consideration in awarding legal decision-making authority and parenting time. *Hays v. Gama*, [citation omitted].
>
> In making the legal decision-making and parenting time determination, the Court is mindful that as a matter of public policy, absent evidence to the contrary, "it is in a child's best interest: (1) To have substantial, frequent, meaningful and continuing parenting time with both parents[; and] (2) To have both parents participate in decision-making about the child." A.R.S. § 25-103(B). Subject to the results of Father's hair follicle test, which was ordered at the February 10, 2017 hearing, Mother has not presented sufficient evidence to depart from the public policy to allow both parents "substantial, frequent, meaningful and continuing parenting time" with the child and to participate in decision-making about the child. Indeed, it appeared from the evidence that Mother's relocation with the child to Wisconsin primarily was for the benefit of Mother and her family--not for the child's best interests.
>
> The Court specifically rejects Mother's position that (i) the child should be with Mother "24/7", and (ii) Father

should not be permitted overnight parenting time until the child is two years old. Indeed, *Planning for Parenting Time: Arizona's Guide for Parents Living Apart*,[9] which Mother introduced into evidence, provides that: (i) "[b]abies begin to respond to a range of different (but equally valuable) types of parenting styles that each parent provides"; and (ii) "it's important that [babies] have frequent contact with each of their parents and have a stable schedule and routine." *(Arizona's Guide for Parents Living Apart*, p.21). Moreover, contrary to what Mother suggests, the fact that the child is breastfeeding is not a basis to restrict Father's parenting time. In this regard, the Guide provides:

> Parents who are not raising their child together must balance the baby's need to nurse with its need to bond with the father. The parents should talk often and openly with each other about the baby. Breast-feeding shouldn't be used to stop the father from spending time with the child. Instead, mothers need to offer the father parenting time, and fathers need to be flexible regarding the need of the baby to nurse. A father can feed an infant with the mother's expressed (pumped) milk, particularly after nursing routines are well established. . . .

(*Id.*, p.57).

Finally, it is not possible to create a long-distance parenting plan that facilitates the child's need to bond with both parents while Mother and the child continue to live in Wisconsin and Father continues to live in Arizona. The Court is mindful that one of the parties will be burdened regardless of which state the Court selects as the primary location for Father's parenting time. In determining whether the parenting time should occur primarily in Wisconsin or Arizona, the Court considered (among other things): (i) Arizona is the child's "home state" and birth state; (ii) Mother, Father and the child lived together in Arizona from

---

[9] Arizona Supreme Court, *Planning for Parenting Time: Arizona's Guide for Parents Living Apart*, (2009), available at http://www.azcourts.gov/portals/31/parentingTime/PPWguidelines.pdf.

the child's birth until at least September 29, 2016, when Mother decided to relocate with the child to Wisconsin without Father's consent; (iii) Father (who Mother is asking pay child support) has an established job in Arizona, which he would have to give up to relocate to Wisconsin in order to have frequent contact with the child; (iv) Mother does not have a regular job in Wisconsin that she would have to quit if she decided to relocate to Arizona; (v) Mother testified that, if she continued to live in Wisconsin as she desires, she would be willing to bring the child to Arizona for Father's parenting time only as her financial resources permitted; and (vi) if Mother continues to live with the child in Wisconsin, Father either will have to miss work frequently or reduce the frequency of his parenting time below the ideal level for the child to bond with Father.

¶48 Mother does not cite to any Arizona authority that restricts a superior court from issuing a temporary order requiring parenting time to take place in a state different than where the mother and child currently live.[10] The superior court considered the advantages and disadvantages to both parents when determining whether the best parenting plan for M.K. should have Father's parenting occur in Arizona or Wisconsin, recognizing that one of the parents would be burdened regardless of which state the court selected.

¶49 Thus, Mother has not shown that the superior court abused its discretion by ordering Father's parenting time to occur in Arizona. *Kay S. v. Mark S.*, 213 Ariz. 373, 383, ¶ 51 (App. 2006) (in considering and

---

[10] In support of her argument, Mother cites several out-of-state cases. *See Mark T. v. Jamie Z.*, 124 Cal. Rptr. 3d 200, 203 (Cal. Ct. App. 2011) (a trial court must not issue a conditional order to coerce the custodial parent into abandoning plans to relocate); *In re Marriage of Smith*, 3 N.E.3d 281, 282 (Ill. App. Ct. 2013) (overturning a temporary order requiring mother to either move back to Illinois or lose physical custody of her child); *Smith*, 941 N.E.2d at 4 (finding Mother of child born out-of-wedlock was free to move before paternity determination); *In re Marriage of Littlefield*, 940 P.2d 1362, 1363 (Wash. 1997) (finding a trial court should make parenting plan decisions based on the circumstances of the parents and children as they exist at the time of trial). Given that under Arizona law Father had parental rights at the time Mother took M.K. to Wisconsin, we do not find these cases persuasive.

weighing different facts, courts might reach different conclusions without abusing their discretion). We defer to the superior court's discretionary findings and exercise of judgment regarding witness credibility and the weighing of evidence, if the superior court remains within the bounds of that discretion. *Gutierrez v. Gutierrez,* 193 Ariz. 343, 346, ¶ 5 (App. 1998); *In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 7 (App. 2010); *see* Ariz. R. Fam. Law P. 82(A).

## CONCLUSION

**¶50** We accept jurisdiction of the petition for special action, but deny relief because the superior court did not err by issuing its temporary orders.

