NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CASEY SCHNEIDER, *Petitioner/Appellee,*

*v.*

JENNIFER PEREA, *Respondent/Appellant.*

No. 1 CA-CV 23-0586 FC
FILED 5-14-2024

Appeal from the Superior Court in Mohave County
No. S8015DO202300163
The Honorable Megan A. McCoy, Judge

**AFFIRMED**

COUNSEL

Casey Schneider, Lake Havasu City
*Petitioner/Appellee*

Law Offices of Heather C. Wellborn, PC, Lake Havasu City
By Heather C. Wellborn, Anita Dale, Russell Woemmel
*Counsel for Respondent/Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

_____

**P A T O N,** Judge:

¶1 Jennifer Perea ("Mother") appeals the superior court's parenting time order. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother and Casey Schneider ("Father") married in 2018 and have two daughters in common, born in 2018 and 2021. Mother has minor children from a previous marriage who are not parties to this appeal but were involved in some of the domestic violence allegations. Father has a teenage daughter from a previous relationship. Domestic violence has been an issue throughout Mother and Father's relationship, with each parent alleging domestic violence by the other.

¶3 In March 2016, Mother called the police saying Father—her boyfriend at the time—accused her of stealing his wallet, yelled profanities at her, and punched a large hole in the laundry room wall, waking her children who were sleeping in the next room. In March 2021, Father alleged that Mother hit him over the head with a coffee mug, splitting his head open. Mother explained that this was done in self-defense, after Father became violent. Father testified that he regularly had to fix their home because Mother punched holes in the drywall and pushed him into a mirror.

¶4 In February 2023, as Mother prepared to leave town with the children for a gymnastics competition, Father prevented Mother from leaving by blocking the driveway, and reported her to the police. Father alleged Mother had bipolar disorder and was suicidal and, based on those allegations, Mother was involuntarily taken to a behavioral health center. Mother was released less than 24 hours later and, at the time of her discharge, the center reported she was a low risk for suicide and of being a danger to others. A police officer who responded to the scene later testified that despite Father's report of domestic violence, they "didn't find any

evidence that an assault had occurred . . . and found that [Mother] wasn't a harm to herself or others."

¶5        A few days after that incident, Mother filed an order of protection against Father which the court dismissed at a contested hearing upon Father's request.  Around that time, Father petitioned for legal separation and also petitioned for an emergency temporary order and temporary orders on legal decision-making and parenting time.  The superior court denied Father's request for an emergency temporary order.

¶6        In March 2023, the Department of Child Safety ("DCS") reported that the children had "been exposed to multiple domestic violence incidents recently, and on an ongoing basis."  DCS also reported that Father "exhibit[ed] domestic violence behaviors such as controlling Mother, isolating her from family, being verbally aggressive, stalking Mother, [and] isolating [their oldest daughter] from school."

¶7        After another contested hearing, the superior court issued an order of protection for Mother and her other children only, as well as temporary orders granting Mother sole legal decision-making and parenting time until the temporary orders hearing on March 22, 2023.  Later that month, Mother asked the court to change the case from legal separation to dissolution.

¶8        At the March 2023 temporary orders hearing, a DCS investigator testified that DCS did not file for dependency because Mother did "her best given the circumstances to protect herself and the children" and persistently filed orders of protection.  The investigator also testified she had "concerns about [Father's] mental health and his mental stability."  The court permitted Father to have supervised visitation with the children for four hours a week.  Father did not schedule any supervised visits.

¶9        The dissolution trial took place in May 2023.  Father and Mother testified, and called several witnesses to testify about their parenting abilities, character, and interactions with each other and their children.  At the end of the trial, the superior court noted: "this is going to be a difficult set of Orders based on how much each of you wants to be in your children's life, and . . . how difficult it is going to be . . . to move forward without conflict."  The court also acknowledged the progress Mother and Father had made since prior proceedings: "this time apart has led to each of you appearing in court in a much more clear manner and a much more in control of yourself manner."  The court noted it would need to "give it the time it deserves" to make sure the decree "adequately

embraces what is going on in this family, protects these children, and is rooted in what is in these children's best interests."

¶10 In its July 2023 dissolution decree, the court found that both parents had committed acts of domestic violence towards each other. The court granted Mother sole legal decision-making authority and ordered equal parenting time. Specifically, the court ordered that the "[p]arents shall exchange the children every Monday, Wednesday and Friday at 6pm at the [] [p]olice [d]epartment, or another mutually agreed upon location." The court also ordered: "If the children attend school or a care provider, the exchange shall be completed by the parent picking up from the school or care provider to avoid contact between parents"; "[n]o communication may be done at exchanges"; and "[e]ach party may send a designee to the exchange with notice to the other parent."

¶11 Mother moved to alter or amend the dissolution decree under Arizona Rule of Family Law Procedure ("ARFLP") 83(1)(A), arguing that the superior court did not properly consider or weigh all the evidence—such as the DCS case records, Mother's testimony, a police officer's and DCS investigator's testimonies—when it granted Father equal, unsupervised parenting time. The superior court denied Mother's motion, finding, "no cause for amendment as the Court did consider all evidence and does not find error in the final orders."

¶12 Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶13 Mother argues the superior court erred by (1) failing to consider all the evidence in ordering equal parenting time and (2) ordering the parents to exchange the children three times each week.

¶14 Father did not file an answering brief. While failure to file an answering brief usually constitutes a confession of reversible error on debatable issues, we decline to treat it as such here because the children's best interests are at issue. *See In re Marriage of Dieszi*, 201 Ariz. 524, 525, ¶ 2 (App. 2002).

4

I. **The record shows the superior court considered all the admitted evidence in rendering its parenting time decision.**

**¶15** Mother argues the superior court erroneously awarded Father unsupervised, equal parenting time because it did not review the admitted evidence, such as the DCS case records, Mother's testimony, Father's violent history, mental health issues, and narcissistic behavior, and testimonies of the police officer and DCS case investigator.

**¶16** The superior court has the discretion to determine parenting time based on the evidence before it. *Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 11 (App. 2020). We presume the court considered all the admitted evidence before issuing its decision. *See Fuentes v. Fuentes*, 209 Ariz. 51, 55–56, ¶ 18 (App. 2004). And "[w]e defer to the superior court's discretionary findings and exercise of judgment regarding . . . the weighing of evidence." *Gutierrez v. Fox*, 242 Ariz. 259, 272, ¶ 49 (App. 2017).

**¶17** Within a parenting time determination, the court must consider all factors relevant to the children's well-being including, but not limited to, "whether there has been domestic violence." A.R.S. § 25-403(A)(8). Here, the court considered "[w]hether there ha[d] been domestic violence . . . pursuant to [Section] 25-403.03" and found that both Mother and Father committed acts of domestic violence. *See* A.R.S. § 25-403(A)(8). Once the court determined that both Mother and Father committed acts of domestic violence, each "parent ha[d] the burden of proving to the court's satisfaction that parenting time will not endanger the child[ren] or significantly impair the child[ren]'s emotional development." *See* A.R.S. § 25-403.03(F). "If the parent meets this burden to the court's satisfaction, the court shall place conditions on parenting time that best protect the child and the other parent from further harm." *Id.*

**¶18** Here, the superior court imposed two of the Section 25-403.03(F) conditions. The court required Mother and Father to exchange the children in a protected setting—either at the specified police department or other mutually agreed upon location. *See* A.R.S. § 25-403.03(F)(1). It also ordered that "the exchange shall be completed by the parent picking up from the school or care provider to avoid contact between parents[,]" and that "[n]o communication may be done at exchanges . . . ." *See* A.R.S. § 25-403.03(F)(9) (The court may "[i]mpose any other condition that the court determines is necessary to protect the child, the other parent and any other family or household member.").

**¶19** At the conclusion of trial, the court acknowledged: "this is going to be a difficult set of Orders based on how much each of you wants to be in your children's life, and . . . how difficult it is going to be . . . to move forward without conflict." Also, "[a]fter significant deliberation," the court issued its factual findings and rendered its parenting time decision. The court's decree stated it "considered the evidence, including the demeanor of the witnesses, reviewed the exhibits as well as the case history, and considered the parties' arguments."

**¶20** The record shows the court considered the admitted evidence to analyze the Section 25-403(A) best interests factors. After Mother moved to amend the dissolution decree—raising concern that the court did not properly consider or weigh all the evidence—the court responded that it "did consider all evidence" and found no error. To the extent Mother believed the decree lacked findings as to certain parts of admitted evidence, she could have requested specific findings of fact before filing her appeal. *See* ARFLP 82(a)(1); *Elliott v. Elliott*, 165 Ariz. 128, 134 (App. 1990) ("A litigant must object to inadequate findings of fact and conclusions of law at the trial court level so that the court will have an opportunity to correct them."). She did not do so. And Mother does not provide a basis on which we can conclude that the court did not consider the evidence presented. Thus, we see no error.

## II. The superior court did not abuse its discretion in ordering the parents to exchange the children three times per week.

**¶21** Mother also argues that because of her "volatile relationship" with Father, the superior court erred in ordering the parents to exchange the children every Monday, Wednesday, and Friday, because the number of exchanges is not in the children's or parties' best interests. Mother states she "does not believe the Court even took the issues of domestic violence into consideration when determining a parenting time schedule."

**¶22** We will affirm the superior court's parenting time orders absent an abuse of discretion. *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11 (App. 2013). An abuse of discretion exists when the record is "devoid of competent evidence to support the decision." *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009). We accept the superior court's findings of fact unless they are clearly erroneous. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590–91, ¶ 8 (App. 2018). The court "has discretion to determine parenting time based on all the evidence before it." *See Gonzalez-Gunter*, 249 Ariz. at 492, ¶ 11. "Consistent with the child[ren]'s best interests," the statute directs the superior court to adopt a parenting plan that "maximizes [each parent's]

respective parenting time." A.R.S. § 25-403.02(B). In determining that plan, "[t]he court shall consider all factors that are relevant to the child[ren]'s physical and emotional well-being." A.R.S. § 25-403(A).

**¶23** The record shows the court considered the protective order in its parenting time determination because it ordered the parents not to communicate at exchanges and that their "physical presence at exchanges shall not be a violation of the protective order." And, as discussed above, the court considered the Section 25-403 best interests factors and imposed Section 25-403.03(F) conditions to protect the children and parents from harm. Thus, while ordering the parents to exchange the children three times per week may seem excessive, we cannot say the court abused its discretion in so ordering.

**¶24** Mother requests attorneys' fees and costs on appeal pursuant to Arizona Rule of Civil Appellate Procedure 21, and Sections 12-342 and 25-324(A). We deny her request.

## CONCLUSION

**¶25** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA